MRS. HARRY MASKA, ALSO KNOWN AS PHYLLIS MASKA,
APPELLEE, V. CLYDE C. STOLL, APPELLANT.

81 N. W. 2d 571

Filed March 1, 1957.   No. 34072.

Fraser, Crofoot, Wenstrand, Stryker & Marshall, Robert G. Fraser, and Albert C. Walsh, for appellant.

Matthews, Kelley & Delehant and Martin A. Cannon, for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

This is an action for damages brought in the district court for Douglas County by Mrs. Harry Maska, sometimes known as Phyllis Maska, plaintiff and appellee, for injuries sustained by her when she was riding as a guest in an automobile being driven by her husband which collided with an automobile being driven by Clyde C. Stoll, defendant and appellant. The case was tried to a jury, resulting in a verdict for the defendant. The plaintiff filed a motion for new trial which was sustained. From the order sustaining the motion for new trial, the defendant appealed.

The plaintiff's amended petition charged the defendant with negligence as follows: In failing to keep a proper lookout for other vehicles upon the road, and particularly the vehicle being driven by the plaintiff's husband; in failing to keep his automobile under proper control

and to make use of the instrumentalities at hand to do so; in failing to yield the right-of-way to the automobile being driven by the plaintiff's husband; in driving at an unlawful and excessive rate of speed in view of the circumstances at said time, to wit:   35 miles an hour; and in failing to apply his brakes or do any other thing to avoid a collision.

The defendant's answer admitted that an accident happened and denied any negligence on his part.  It further alleged that the sole and proximate cause of the collision was the gross negligence and want of care on the part of the driver and owner of the automobile in which the plaintiff was a passenger; and that if the plaintiff sustained any resultant damages or injuries, it was through no fault or negligence on the part of the defendant.

The accident occurred on Saturday, June 12, 1954, at or about 1:30 or 1:35 p.m., in the intersection of Hickory and Twenty-ninth Streets in Omaha.  Hickory Street runs east and west and is paved with brick east of Twenty-ninth Street which runs north and south and is paved with asphalt.  Hickory Street is about 24 feet wide east of Twenty-ninth Street and about 42 feet wide west of Twenty-ninth Street, and runs up a fairly steep grade to its intersection with Twenty-ninth Street. West of Twenty-ninth Street, Hickory Street is not quite as steep.  Twenty-ninth Street is practically level, being slightly down grade to the south.  The intersection of the two streets is level.  At the time of the accident the weather was clear, the sun was shining, and the streets were dry.

For convenience we will refer to the plaintiff's driver as Maska and to his car as the Maska car; to the plaintiff as Phyllis; and to the defendant as Stoll and to his car as the Stoll car.

Maska testified that on June 12, 1954, he and his wife Phyllis and their small son were going to South Omaha.  Maska was driving his 1952 Buick.  His wife

sat to his right and their son stood up between them. Maska was driving south on Twenty-ninth Street which intersects with Hickory Street in a residential district. There was a slight down grade to the south on Twenty-ninth Street. Hickory Street crosses Twenty-ninth Street at right angles. The grade on Hickory Street to the east and west is fairly steep. It comes up from the east into the intersection and then goes up to the west. There is a "slow" sign facing north on Twenty-ninth Street. As Maska drove south on Twenty-ninth Street, his speed was 20 miles an hour, and he slowed down some as he approached the intersection. He noticed a car going east on Hickory Street, which was to the west of the intersection. This car parked half-way up the block, and Maska kept on going. He thought he could see almost to the next intersection west, but could not see too far to the east for the reason that it was down grade. He looked to the east, and as he approached the intersection there was nothing visible to him from the east. After he had entered the intersection, he saw Stoll's car about on the crosswalk on Hickory Street. Stoll's car was somewhere in the crosswalk that parallels Twenty-ninth Street on the east side of the intersection. Maska also testified that he did not have much time to do anything. Stoll's car was close enough that Maska knew he was going to be hit by it. He put his arm up in front of his son to hold him back, stepped on the brake, and there was a collision between his car and Stoll's car. The right front fender of the Stoll car struck the Maska car on the side, moved it a short distance, and it stopped in the intersection. Stoll's car glanced off the Maska car and proceeded east, then turned south on Twenty-ninth Street and struck a car that was parked up against the crosswalk that goes across Twenty-ninth Street on the south side of the intersection where it stopped. After the impact the Maska car had moved between 5 and 10 feet. Neither car left any skid marks. Maska talked to Stoll after the

accident, and believed that Stoll told him that he saw Maska, but it was too late to avoid an accident. Phyllis got out of the car. She was injured, and was helped by persons residing in the immediate vicinity. Maska further testified that at the northeast corner of the intersection there was a hedge, 4 feet or a little higher, on the inside of the sidewalk. Hickory Street to the east of the intersection is considerably narrower than Twenty-ninth Street. Stoll did not reduce his speed at any time. Stoll's right front fender struck back of the left front wheel of the Maska car. The frame of the Maska car was bent just back of the front wheel. The steering assembly and knee action on the car were damaged, and the back fender was dented. Maska believed that the Stoll car had hit the front of his car and the back end of the Stoll car swerved against the back end of the Maska car. The hood of the Maska car flew off and lit upon the sidewalk. The Maska car was not driveable, and was towed away.

On cross-examination Maska testified that he lived on Park Avenue, the next street west of Twenty-ninth Street. He had been in Omaha for about 2 months. He had been over Twenty-ninth Street a few times and was rather familiar with it. There was not much traffic as he approached the intersection. When he was about 30 feet north of the crosswalk, he glanced to the right and saw a car pull up to the curb and stop. In a deposition taken before trial he testified that he was not sure he applied his brakes, that everything happened suddenly. He heard no sound of brakes being applied or of a horn or other signal. He did not honk his horn. He remembered telling the police that he was going 20 to 25 miles an hour, and was going the same speed at the time of the collision. He believed he told Stoll that he did not see him until just a short time before the accident. It was just a "fleeting moment" until Stoll's car hit his car after he saw the Stoll car.

Stoll testified that he lived in Nebraska City, and on

June 12, 1954, he drove his 1946 model Ford club coupé to Council Bluffs to visit his wife's aunt and uncle, Mr. and Mrs. Joseph Childers. They decided to go to the races in Omaha, leaving Council Bluffs a few minutes before 1 p.m. Mrs. Childers sat to Stoll's right in the front seat, and Mr. Childers on the right side in the back seat. Stoll was not familiar with Twenty-ninth Street or Hickory Street. He had never been to the races in Omaha, and Mr. Childers was directing the route for him to travel to avoid heavy traffic. Stoll was traveling between 15 and 20 miles an hour in high gear. As he came up the hill on Hickory Street there were no cars parked, and traffic was light. There were no traffic control signals governing westbound traffic on Hickory Street. He was in his own right lane of traffic. There were three cars parked parallel to the curb on the east side of Twenty-ninth Street north of the intersection, and two cars parked on the west side of Twenty-ninth Street south of the intersection. Hickory Street widens out through the intersection at which point it is 42 feet wide, as is Twenty-ninth Street. Twenty-ninth Street, as it intersects with Hickory Street, is practically level. Stoll further testified that as he was traveling up Hickory Street and approached the intersection, he could see a little bit of the northeast corner of the intersection where there is a hedge. As he pulled out into the intersection, he gave a signal to make a left turn. He was driving 15 to 20 miles an hour, maintaining a constant speed. He observed no northbound traffic coming toward him. Prior to making the turn, Stoll looked to the north. He saw Maska's car just before the accident. At that time the cars were almost together. Stoll swerved his car and applied his brakes. After the accident Stoll's car traveled 10 or 12 feet and struck the bumper of a parked car. He got out of his car to see if anybody was hurt. He told Maska he did not see him, and Maska told Stoll that he did not see Stoll. There was a "slow" sign at the south-

east corner of the intersection governing northbound traffic.

On cross-examination Stoll testified that he was in the process of making a left turn when the accident happened. He sustained damage to the right front fender and to the side of his car. The right front headlight was broken. Part of the front bumper on the right side was damaged. The fender went through the radiator and knocked it back against the fan. He testified that while coming up that narrow street he could see there were bushes that blocked his view to the right, and also parked cars which blocked his view. He could see, when he got to the sidewalk. He did not slow down as he came into the intersection, and did not see the Maska car until just a "split second" before the accident. The accident was practically over when he saw the Maska car, and Stoll's car stopped about where the accident took place.

Mrs. Childers testified that she was familiar with some of the streets in Omaha; that there were no cars parked on either the north or south side of Hickory Street; that she was more or less directing Stoll's route to the races; and that she was watching because she was not too familiar with the streets. She looked to the north and south on Twenty-ninth Street to see if there was any traffic before entering the intersection. She could see about one-third of a block to the north and no farther because of a parked car. She saw no cars coming from the north. Coming into the intersection, Stoll was traveling about 15 miles an hour. After arriving in the intersection, in just a "split second" she saw the car coming from the north on her side of the car. The Stoll car was in the intersection just about its car length when she saw the Maska car. The Stoll car hit a parked car at the southwest corner of the intersection where it came to rest.

On cross-examination she testified that when she saw the Maska car, the Stoll car was just at the middle of

Twenty-ninth Street, the length of the car into the intersection. Both cars did not enter the intersection at the same time, but they reached the point of impact at the same time.

The trial court gave no reasons why it sustained the plaintiff's motion for new trial.

If the trial court gave no reasons for its decision, then the appellant meets the duty placed upon him when he brings the record here with his assignments of error and submits the record to critical examination with the contention that there was no prejudicial error. The duty then rests upon the appellee to point out the prejudicial error that he contends exists in the record and which he contends justifies the decision of the trial court. The appellant then in reply has the right, if he desires, of meeting those contentions. Those errors will then be considered and determined here so far as necessary to the appeal, subject, of course, to the right to notice and consider plain errors not assigned. See, Pongruber v. Patrick, 157 Neb. 799, 61 N. W. 2d 578; Greenberg v. Fireman's Fund Ins. Co., 150 Neb. 695, 35 N. W. 2d 772.

The plaintiff contends that the trial court erred in refusing to give the plaintiff's requested instruction No. 1. This instruction was to the effect that the evidence showed without dispute that the defendant was guilty of negligence as a matter of law which proximately caused the accident in suit; and that the jury should return a verdict finding for the plaintiff, and restrict its deliberations to the amount of her damages in accordance with other instructions given by the trial court. This assignment of error raises the question of the sufficiency of the evidence to sustain the verdict.

This court, on many occasions, has stated the rule that in determining the sufficiency of the evidence to sustain a verdict, the evidence must be considered most favorably to the successful party, any controverted fact must be resolved in his favor, and he must have the benefit of the inferences reasonably deducible from the evidence.

In considering this assignment of error, we make reference to section 39-728, R. R. S. 1943, which provides: "Motor vehicles traveling upon public highways shall give the right of way to vehicles approaching along intersecting highways from the right, and shall have the right of way over those approaching from the left when said vehicles shall reach the intersection at approximately the same time. In all other cases the vehicle reaching the intersection first shall have the right of way."

Section 39-751, R. R. S. 1943, provides in part: "When two vehicles approach or enter an intersection at approximately the same time, the driver of the vehicle on the left shall yield the right of way to the vehicle on the right except as otherwise provided in section 39-752. The driver of any vehicle traveling at an unlawful speed shall forfeit any right of way which he might otherwise have hereunder."

The rules applicable to cases involving the duties of drivers approaching and entering intersections have been set forth many times by this court as follows: When a person enters an intersection of two streets or highways he is obligated to look for approaching cars and to see those within that radius which denotes the limit of danger. If he fails to see a car which is favored over him under the rules of the road, he is guilty of contributory negligence sufficient to bar a recovery as a matter of law. If he fails to see a car not shown to be in a favored position, the presumption is that its driver will respect his right-of-way and the question of his contributory negligence in proceeding to cross the intersection is a jury question. Where two motorists approach an intersection at or about the same time, the driver approaching from the right at a lawful speed has the right-of-way, and he may ordinarily proceed to cross, having a legal right to assume that his right-of-way will be respected by the other party, but if the situation is such as to indicate to the mind of an ordinarily careful

and prudent person in his position that to proceed would probably result in a collision, then he should exercise ordinary care to prevent an accident, even to the extent of waiving his right-of-way. One having the right-of-way may not on that account proceed with disregard of the surrounding circumstances, nor is he thereby relieved from the duty of exercising ordinary care to avoid accidents. See Griess v. Borchers, 161 Neb. 217, 72 N. W. 2d 820. See, also, Elliott v. Swift & Co., 151 Neb. 787, 39 N. W. 2d 617; Whitaker v. Keogh, 144 Neb. 790, 14 N. W. 2d 596.

That the car of plaintiff's driver was on the right of defendant's car when each car was approaching the intersection is not in dispute. However, in view of the sections of the statute and the rules as announced in the cases heretofore set out, the question presented is, did the plaintiff's driver have the right-of-way? Or, in the event he had the right-of-way, did the defendant negligently violate that right? Or, did the plaintiff's driver negligently enter the intersection and forfeit any right-of-way he may have had under the existing circumstances?

Under the evidence adduced, we conclude that the question of negligence on the part of either the plaintiff's driver or the defendant was for the jury to determine. No negligence could be imputed to the plaintiff, nor did the trial court instruct that it could.

Where different minds may draw different conclusions from the evidence in regard to negligence, the question should be submitted to the jury. See Griess v. Borchers, *supra*.

The plaintiff contends that the trial court erred in instruction No. 1 in not submitting to the jury the question of whether defendant's rate of speed was excessive under the circumstances.

The plaintiff alleged in paragraph III of her amended petition that the resultant damages and injuries to the plaintiff were directly and proximately caused by the

negligence of the defendant; and in (d) thereunder, "In driving at an excessive, unlawful and reckless rate of speed in view of the circumstances at said time, to-wit: 35 miles per hour."

Section 39-7,108, R. R. S. 1943, provides in part: "(1) No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions then existing. (2) No person shall drive a vehicle in any residence district within any city or village at a speed greater than twenty-five miles per hour unless, by the ordinance of such city or village, a greater rate of speed is specifically permitted. (3) The following speeds shall be prima facie lawful, but in any case when such speed would be unsafe, they shall not be lawful: * * * (b) twenty-five miles per hour in any residence district; * * * (4) The fact that the speed of a vehicle is lower than the foregoing prima facie limits shall not relieve the driver from the duty to decrease speed when approaching and crossing an intersection, * * *."

The defendant testified on cross-examination: "Q- Now, going back for one minute, here, your testimony on direct examination was that as you came up that little, narrow street you could see that there were bushes that blocked your view and hid you over to your right? A- That's correct. Q- And there were some parked cars up in this general vicinity here (indicating)? A- That's correct. (Indicating on a map drawn to scale, Exhibit 1, in evidence. We have heretofore recited in a resume of the evidence that there were cars parked on Twenty-ninth Street.) Q- They also hid you from view and blocked your view? A- Yes. Q- And then as you proceeded to go into the intersection you had to get beyond them, I suppose, before you could look? A- About the sidewalk, you could see. Q- Up about the sidewalk you could see past these parked cars? A- You could get a big look from up behind there. Q- Just about the time you got to here, then you had a fairly open view down that way (indicating)? (As

shown by the evidence this would be to the north.) A- Fairly; yes. Q- And was it at that point that you looked to the north, or was it later? A- I looked at the north and the south both. * * * Q- But you were proceeding at that time between fifteen and twenty miles an hour? A- That's correct. Q- And I believe your testimony was you kept going at a steady rate of speed, just about the same rate, up until the accident? A- That's right. Q- So as you proceeded out of that blind intersection you didn't slow down at all? A- No. * * * Q- And did you see Maska's car at that time? A- No. Q- Did you see him at all before the accident? A- Just maybe a split second before the accident. Q- When the accident was practically over with was when you first saw him? A- Yes."

The plaintiff cites Davis v. Dennert, 162 Neb. 65, 75 N. W. 2d 112, as follows: "The lawfulness of the speed of a motor vehicle within the prima facie limits fixed is determined by the further test of whether the speed was greater than was reasonable and prudent under the conditions then existing."

"What is a reasonable speed is necessarily largely dependent on the situation and the surrounding circumstances, it being obvious that a speed which would be safe, reasonable, and proper in some places and under some circumstances might be highly dangerous, unreasonable, and improper in other places and under other circumstances." Tews v. Bamrick, 148 Neb. 59, 26 N. W. 2d 499. See, also, Granger v. Byrne, 160 Neb. 10, 69 N. W. 2d 293.

This court has considered an almost identical omission in the case of Harding v. Hoffman, 158 Neb. 86, 62 N. W. 2d 333. In that case, quoting in part the language of Hamblen v. Steckley, 148 Neb. 283, 27 N. W. 2d 178, this court said: " 'The material applicable limitations and qualifications upon speed contained therein should have all been included in the instruction to enable the jury to observe and understand the duty of the drivers

in approaching the intersection of narrow country roads at a blind corner where special hazards existed with respect to other traffic by reason of highway conditions.' Such language has application in the case at bar wherein there was competent evidence from which it could have been reasonably concluded that plaintiff's driver was driving at an unlawful rate of speed and that defendant was driving at an unlawful rate of speed, to wit, 30 miles an hour without decreasing same while approaching and crossing the intersection where a known special hazard existed with respect to other traffic or by reason of weather or highway conditions.

"In that connection also, plaintiff, among other things, alleged in her petition that defendant was negligent in that he drove his car 'at a high and dangerous rate of speed, and at a rate of speed greater than was reasonable and proper having regard for the traffic and conditions of the road, and at a rate of speed such as to endanger the life and limb of the plaintiff and the safety of others upon said county road.' As heretofore observed, there was competent evidence in the record supporting that allegation. However, instruction No. 1 erroneously omitted any submission of such issue to the jury. It simply recited an allegation: 'That defendant failed to slacken the speed of his automobile,' without subsequently reciting in any instruction the material applicable statutory limitations and qualifications imposed upon him with regard to speed at the place and under the conditions presented."

There was competent evidence from which it could have been reasonably concluded that the defendant was driving at a rate of speed that was greater than was reasonable and prudent under the conditions then existing in either approaching or entering the intersection. Also, there was competent evidence from which it could reasonably be concluded that the plaintiff's driver was driving at a rate of speed that was greater than was reasonable and prudent under the conditions then exist-

ing in either approaching or entering the intersection. This was an issue for the jury to determine.

In Thurow v. Schaeffer, 151 Neb. 651, 38 N. W. 2d 732, this court held: "The trial court has the duty to instruct the jury on issues presented by the pleadings and evidence, whether requested to do so or not, and a failure so to do constitutes prejudicial error."

We believe the trial court committed prejudicial, error in failing to instruct the jury on the issue of speed which was pleaded in the plaintiff's amended petition. No other instructions given by the trial court properly covered this issue.

With reference to the controversy regarding the Municipal Code of the City of Omaha, section 55-7.5 prohibits speed in excess of 15 miles an hour while passing "slow" signs. The plaintiff's driver was faced with a "slow" sign, and there is no dispute but that there is another "slow" sign on the south side of the intersection facing northbound traffic on Twenty-ninth Street. The plaintiff's driver passed the "slow" sign facing him, and was driving toward the intersection at a rate of speed of about 20 miles an hour which he maintained. It appears that the plaintiff's contention is that while an automobile passes a "slow" sign facing his direction of travel, he must not exceed a speed of 15 miles an hour, but as soon as the rear end of his automobile clears the "slow" sign, the motorist may then disregard the "slow" sign and resume a higher speed. We are not in accord with the plaintiff's contention.

While we find no case exactly on this point, we deem the following to have some applicability.

In Safeway Cabs, Inc. v. Honer, 155 Neb. 418, 52 N. W. 2d 266, it was said that when a statute is ambiguous or susceptible of two constructions, one of which creates absurdities, unreasonableness, or unequal operation and the other of which avoids such a result, the latter should be adopted. See, also, Pierson v. Faulkner, 134 Neb. 865, 279 N. W. 813; Ledwith v. Bankers Life Ins. Co.,

156 Neb. 107, 54 N. W. 2d 409. The same rule would apply to a city ordinance.

In Rogers v. Brown, 129 Neb. 9, 260 N. W. 794, the case involved passing a "slow" sign. The court stated that such sign was for the purpose of calling attention of motorists to danger, law, and duty.

In Stevenson v. Sarfert, 310 Pa. 458, 165 A. 225, the court said: "The phrase 'passing a school building' does not limit the application of this humane and salutary provision of the law to the space in the street immediately in front and back and at the sides of a school building." The court was speaking about a section of the statute regulating speed not to exceed 15 miles an hour to the space in the street immediately in front and back and at the sides of a school building.

The ordinance in question prohibits speed in excess of 15 miles an hour while passing the danger of which "slow" signs warn, which we believe would logically and reasonably mean through the intersection and until the motorist had cleared it and gone beyond the "slow" sign in the opposite direction. The plaintiff's contention is without merit.

Other assignments of error relate to instructions which, for the purpose of this appeal, need not be considered, except to say that the definition of "gross negligence" given by the trial court in instruction No. 7 was superfluous and had no relation to the issues in this case. We assume that on a retrial instructions will be given by the trial court as the same may relate to the evidence in that trial.

For the reasons given herein, we conclude that the judgment of the trial court sustaining the plaintiff's motion for new trial should be, and is hereby, affirmed.

AFFIRMED.

CHAPPELL, J., participating on briefs.