RONALD CARLEY, APPELLANT, v. EDWARD MILAN MEINKE, APPELLEE.

150 N. W. 2d 256

Filed April 28, 1967. No. 36359.

William H. Mecham and Jack L. Spence, for appellant.

Sodoro & Meares, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

CARTER, J.

This is an action for damages for personal injuries sustained by the plaintiff while riding as a guest in an automobile owned and operated by the defendant. The defendant denied the existence of gross negligence and alleged contributory negligence and assumption of risk by the plaintiff. At the close of the evidence, the trial court sustained the defendant's motion for a directed verdict and dismissed the action. The plaintiff has appealed.

The plaintiff was an unmarried man about 23 years of age. On the evening of January 4, 1964, after drinking two bottles of beer, he rode with one Tomsu to the

home of Steve Prerost to participate in a going away party. There he engaged in dancing, listening to music, and drinking. There he drank three or four beers, possibly more. Tomsu left early and the plaintiff sought and obtained a ride home with the defendant. They left the Prerost home in the defendant's car with the defendant doing the driving. Plaintiff was in the front seat with the defendant and Don Petrovich and Patrick Abbott occupied the back seat. Upon leaving the party, plaintiff observed that the defendant walked normally, talked coherently, and observed nothing unusual about him. No objection was made to the defendant as the driver at that time.

The defendant drove to Thirty-second Avenue and Vinton Street where the defendant stopped for a stop sign. No complaint is made of the defendant's condition or of his driving up to this point.

After crossing Thirty-second Avenue, the defendant began to increase his speed. When he crossed the viaduct over the interstate highway, plaintiff testified the defendant was traveling at a rate of 55 to 60 miles per hour. When he crossed the bridge over the railroad tracks, plaintiff said the defendant was traveling slightly over 60 miles per hour. Defendant admitted in a deposition that he was traveling 55 to 60 miles per hour in passing over this section of the road.

Immediately east of the railroad overpass, a railroad track crosses Vinton Street. There were dips on each side of the track and the crossing itself was rough. Defendant hit the dip and plaintiff testified that he told the defendant "to take it easy." Defendant applied his brakes after hitting the dip. The defendant continued to drive from the dip to Twenty-fifth Street at 55 to 60 miles per hour, the defendant admitting that he drove this section of the road in excess of 50 miles per hour, but not more than 60 to 65 miles per hour. The defendant failed to negotiate a jog in the road at Twenty-fifth Street and the car sheared off a telephone pole, crashed

through a fence on a private lot, and overturned. That plaintiff sustained serious injuries is not disputed. A police investigator estimated the distance from the dip to Twenty-fifth Street to be 600 to 700 feet. He found tire marks on the pavement for a distance of 70 feet which led to the sheared-off telephone pole. The police investigator talked with the defendant at the scene of the accident and smelled the odor of alcohol on his breath. The investigator testified that the surface of the street was armor-coated asphalt. The street was dry. It was dark and his measurements were made by the aid of car lights and a flashlight.

Defendant testified that he drank one glass of beer before he went to the party and that he drank from 6 to 10 cups of tap beer after his arrival. He testified that he felt no effects from the beer and that he was sober. He stated that he had driven this road many times and was familiar with the jog that he failed to negotiate. He said he had an appointment later to meet other friends at a cafe which he had intended to keep. He testified that he applied his brakes after hitting the dip but said he was going in excess of 50 miles per hour thereafter, but not to exceed 60 or 65 miles per hour. He testified that he heard no warning as to his driving from the plaintiff or anyone else in the car. He said that the plaintiff wanted him to drive faster by telling him several times: " 'Go faster; get on it.' "

Petrovich, one of the occupants of the rear seat, was called by the defendant as a witness. His testimony was substantially as follows: When they entered the car, plaintiff said: " 'Nice car! '62 Chevy.' * * * 'How fast will the thing go?' " Defendant replied: " 'It goes pretty good.' " The witness said that Ed (Meinke) "got on it" and plaintiff said: " 'Love it! Love it!' " He stated that plaintiff told defendant, " 'Faster! faster,' " on five or six occasions. He said: "We told Meinke to slow down; but Ron (plaintiff)—every time * * * said, 'Faster, baby!'," and we told Ron to shut up quite a few times.

In reviewing the correctness of a trial court's action in directing a verdict, the party against whom the motion was directed is entitled to have the evidence, and every reasonable inference that can be drawn therefrom, construed in the light most favorable to him. McIntosh v. Union P. R. R. Co., 146 Neb. 844, 22 N. W. 2d 179; Crusinberry v. Merryman, 176 Neb. 479, 126 N. W. 2d 481; Countryman v. Ronspies, 180 Neb. 76, 141 N. W. 2d 425. We think there is evidence by the plaintiff in this case which, if believed, would sustain the following findings: (1) That defendant was driving at an excessive speed under all the circumstances; (2) that defendant did not exercise proper control of his automobile and that he failed to exercise a proper lookout; (3) that defendant drank excessive quantities of beer and had an alcoholic breath at the time of the accident; (4) that plaintiff warned the defendant of his negligent driving; and (5) that other passengers in the automobile warned the defendant to slow the speed of the automobile. It is true that there were conflicts in the evidence.

It is also true that any one of the foregoing acts of negligence might not, standing alone, constitute gross negligence. The case falls within the class of cases represented by Smith v. Damato, 172 Neb. 811, 112 N. W. 2d 21, wherein it is said: "It is apparent that no one act of the defendant can be separated from the whole of these acts and held to be the independent cause of this accident. Under these circumstances, each act is not to be segregated and weighed separately to determine whether or not it constituted gross negligence. The several acts are to be considered as a whole. While each of several acts, standing alone, may not exceed the bounds of ordinary negligence, yet, taken together, they may establish gross negligence. In such cases, it is for the jury to determine whether a defendant is guilty of gross or ordinary negligence. A verdict should not be directed nor a cause of action dismissed unless a court can definitely determine that the evidence of defendant's negligence,

when taken as a whole, fails to reach the degree of negligence that is considered gross. Here the jury were not bound to find that defendant's acts were negligence in a very high degree, but a jury question was in our opinion presented as to whether or not, under the circumstances here, the things which defendant did and failed to do amounted to negligence in a very high degree, i.e., gross negligence." See, also, Komma v. Kreifels, 144 Neb. 745, 14 N. W. 2d 591; O'Neill v. Henke, 167 Neb. 631, 94 N. W. 2d 322; Kaufman v. Tripple, 180 Neb. 593, 144 N. W. 2d 201.

In determining questions of negligence and the degree thereof, the speed at which a motor vehicle is being driven under all the circumstances shown by the evidence is an important circumstance to be considered. Evidence as to the drinking of intoxicants within a reasonable time prior to an accident is a circumstance to be considered in determining questions of negligence. Kaufman v. Tripple, *supra*. The familiarity of a driver with the road upon which he is driving when an accident occurs is a circumstance to be considered in determining questions of negligence and the degree thereof. A guest is not required to use the same degree of care as the driver of the automobile. If a guest perceives danger, or should have perceived it under the circumstances shown by the evidence, a duty to warn the driver arises.

What amounts to gross negligence is a question to be ascertained from the facts and circumstances of each particular case. Robinson v. Hammes, 173 Neb. 692, 114 N. W. 2d 730. There is evidence in this case which, if believed, will sustain a finding of gross negligence. There is conflicting evidence which, if believed, will sustain a finding that gross negligence did not exist or, if it did, that plaintiff was guilty of contributory negligence. These issues upon which the evidence was conflicting are for the jury.

We think the evidence is sufficient to make a case of gross negligence for the consideration of a jury. The

654

defendant denied the existence of gross negligence and produced evidence in support of his contention. The resolution of these conflicts in the evidence is for the jury. Defendant also asserted contributory negligence by the plaintiff upon which there is conflict in the evidence. We conclude that these issues are for the jury and that the trial court was in error in directing a verdict. The judgment of the district court is reversed and the cause remanded for a new trial in accordance with this opinion.

REVERSED AND REMANDED.