HERBERT M. BRUGH, ADMINISTRATOR OF THE ESTATE OF
DENNIS E. BRUGH, DECEASED, APPELLANT AND CROSS-
APPELLEE, V. OWEN D. PETERSON ET AL., APPELLEES AND
CROSS-APPELLANTS.

159 N. W. 2d 321

Filed June 7, 1968.   No. 36689.

Barney, Carter & Buchholz, for appellant.

Baylor, Evnen, Baylor & Urbom and J. Arthur Cur-
tiss, for appellee Peterson.

Healey & Healey, for appellee Fischer.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, MC-COWN, and NEWTON, JJ.

BOSLAUGH, J.

This is an action for wrongful death brought by the administrator of the estate of Dennis E. Brugh, deceased, against Owen D. Peterson and Lloyd K. Fischer. The jury returned a verdict in the amount of $35,000 against each defendant. The defendants' motions for judgment notwithstanding the verdict were overruled, but their motions for new trial were sustained. The plaintiff has appealed and the defendants have cross-appealed.

The plaintiff's decedent, Dennis, died as the result of injuries sustained in an automobile accident that occurred near Lincoln, Nebraska, at about 10 p.m. on March 12, 1966. The weather was clear and the road was dry. Dennis was riding in a 1965 Pontiac station wagon owned by the defendant Fischer and operated by his son Kenneth. The Fischer automobile was proceeding east on Pioneers Boulevard and had entered the intersection at Seventieth Street when it was struck by a 1965 Plymouth automobile operated by the defendant Peterson and proceeding south on Seventieth Street.

Pioneers Boulevard east of the intersection was a gravel road. The intersection, Seventieth Street, and Pioneers Boulevard west of the intersection are surfaced with black-top. Seventieth Street from the north has a slight incline, approximately 2 percent, as it approaches the intersection. Pioneers Boulevard slopes down as it approaches the intersection from the west, and an embankment along the north edge of Pioneers Boulevard gradually diminishes toward the intersection. Seventieth Street is an arterial protected by stop signs on each side of the intersection. There is a "Stop Ahead" sign on Pioneers Boulevard approximately 400 feet west of the stop sign and a "Pavement Ends" sign approximately 1,000 feet west of the intersection. The posted speed

limit on Seventieth Street is 45 miles per hour.

Kenneth Fischer, who was driving the Pontiac station wagon, has no recollection of the accident. The last thing he remembers is turning east onto Pioneers Boulevard from Forty-eighth Street. Linda Weiderspan, a passenger in the Fischer automobile, also has no memory of the accident.

Frank Campbell testified that he was sitting on the right side of the front seat of the Fischer automobile at the time the accident happened. Campbell also testified that Kenneth Fischer intended to turn north on Seventieth Street and was going about 30 or 35 miles per hour; that Campbell did not see the "Pavement Ends" sign or the "Stop Ahead" sign; that he is not sure that he saw the stop sign but he knew that it was there; that he said to Fischer, " 'I think we passed a stop sign back there' "; that Fischer said, " 'Did I?' "; that the impact then occurred; and that the automobile began to spin. On cross-examination Campbell testified that the Fischer car had entered the intersection when he said that he thought they had passed a stop sign.

The defendant Owen Peterson testified that he was driving the 1965 Plymouth automobile south on Seventieth Street at approximately 45 miles per hour; that he first saw the Fischer automobile when he was 75 to 100 feet north of the intersection; that the Fischer automobile was then about the same distance west of the intersection; that he applied his brakes immediately; that the Fischer automobile proceeded into the intersection without stopping or slowing down; and that the impact occurred.

The front of the Peterson car struck the left side of the Fischer automobile near the rear wheel. The point of impact was in the west lane of Seventieth Street near the center of the intersection. The Peterson automobile left skid marks of from 24.5 feet to 56 feet leading up to the point of impact. There was extensive damage to the

front end of the Peterson automobile and to the left side of the Fischer automobile.

The Fischer automobile came to rest in the ditch southeast of the intersection, headed to the southwest, with its left side against a utility pole. The left front wheel of the Fischer automobile was 47 feet from the center of the intersection.

The Peterson automobile came to rest on the east shoulder of Seventieth Street, headed to the south. The left rear wheel of the Peterson automobile was 63 feet from the center of the intersection.

The plaintiff's decedent was riding as a guest in the Fischer automobile. Before the plaintiff could recover from the defendant Fischer it was necessary to establish gross negligence in the operation of the Fischer automobile. § 39-740, R. R. S. 1943.

Gross negligence within the meaning of the motor vehicle guest statute means gross and excessive negligence or negligence in a very high degree; the absence of slight care in the performance of duty; an entire failure to exercise care; or the exercise of so slight a degree of care as to justify the belief that there was an indifference to the safety of others. Callen v. Knopp, 180 Neb. 421, 143 N. W. 2d 266.

The failure to stop at the stop sign or see the Peterson automobile, alone, was not sufficient to establish gross negligence. Callen v. Knopp, *supra*. The failure to observe the warning signs did not establish gross negligence. Boismier v. Maragues, 176 Neb. 547, 126 N. W. 2d 844.

There was evidence of a warning from the passenger Campbell, but this occurred after the Fischer automobile had entered the intersection and was just before the impact. There was evidence of testimony by Campbell at a previous hearing in another proceeding concerning an earlier warning, but this evidence was admitted only for the purpose of impeachment.

There is no evidence in this case of negligent conduct

extending over a period of time. The negligence of Fischer is characterized as momentary in nature. As we view the record, the evidence failed to establish gross negligence. The motion of the defendant Fischer for judgment notwithstanding the verdict should have been sustained.

With respect to the defendant Peterson, the plaintiff alleged that Peterson operated the Plymouth automobile at an excessive speed; that he failed to reduce its speed; that he failed to keep a proper lookout; and that he failed to maintain a reasonable control.

On cross-examination the defendant Peterson admitted that he had stated, in a previous deposition, that he had not looked to the left or to the right as he approached the intersection. Although this admission was subject to explanation and interpretation, it tended to support the plaintiff's allegation of the failure to keep a proper lookout.

On the issue of speed the plaintiff produced an expert witness, David I. Cook, an Associate Professor of Engineering Mechanics. Professor Cook was allowed to testify, over objection, in answer to a hypothetical question, that the Peterson automobile was traveling at not less than 52 miles per hour before the accident.

Professor Cook testified that he had determined a coefficient of friction by experimentation; and that upon the basis of the skid marks made by the Peterson automobile prior to the impact, it had a minimum speed of not less than 30 miles per hour if it was assumed that the Peterson automobile had stopped at the point of impact. This evidence was proper. A qualified expert, upon laying a proper foundation, may give his opinion as to the minimum speed which a vehicle must have been traveling to lay down the skid marks shown in the evidence. Flory v. Holtz, 176 Neb. 531, 126 N. W. 2d 686.

Professor Cook's determination of the speed of the Peterson automobile in this case, including the impact,

involved an application of the law of conservation of energy, the law of conservation of momentum, and the law of recovery. It was essentially a mathematical calculation in which it was necessary to determine a large number of factors and variables. Some were determined by experimentation. Others were determined by inspection of photographs taken at the scene of the accident. Others were determined by assumption.

As an example, Professor Cook assumed that both drivers had no control over their vehicles after the impact. There was no direct evidence concerning this factor, a factor which could be of great significance because direction and distance traveled after the impact are of importance in the calculation made.

The situation in this case is comparable to that which was presented in Flory v. Holtz, *supra*. There we held that similar testimony by this same witness was properly excluded. The case points out that the foundation for the opinion was inadequate, that it depended in part upon inferences based upon assumptions, and that there were many unknown factors which might have influenced the result.

The evidence here is such that the jury might infer that the Peterson automobile was traveling at an excessive speed as it approached the intersection. Flory v. Holtz, *supra*. But the expert opinion depends upon the resolution of so many variables that it is, in effect, a statement of a possibility. Under the circumstances in this case the expert testimony was neither necessary nor advisable as an aid to the jury. See Drahota v. Wieser, *ante* p. 66, 157 N. W. 2d 857.

We think that the trial court erred in permitting Professor Cook to state his opinion as to the speed of the Peterson automobile in this case, including the impact, and that his tesitmony should have been confined to speed based upon skid marks only.

Some criticism is made of instruction No. 13 relating to the duty of a driver to yield the right-of-way if neces-

sary to avoid a collision. Perhaps a more accurate state-. ment of the rule is that, although a driver may have the technical right-of-way, if the situation is such as to indicate to the mind of an ordinarily careful and prudent person in his position that to proceed would probably result in a collision, then he should exercise ordinary care to prevent an accident, even to the extent of waiving his right-of-way. See Maska v. Stoll, 163 Neb. 857, 81 N. W. 2d 571.

It is unnecessary to consider the other assignments of error.

The order of the district court sustaining the motion of the defendant Peterson for a new trial is affirmed. The order of the district court sustaining the motion of the defendant Fischer for a new trial is reversed and the cause remanded with directions to sustain the motion of the defendant Fischer for judgment notwithstanding the verdict.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.

SMITH, J., participating on briefs.

McCOWN, J.

I respectfully dissent. In considering a motion for a directed verdict, the party against whom the motion is made is entitled to have every disputed question of fact in the evidence resolved in his favor and to have the benefit of every inference that can reasonably be drawn therefrom. Carley v. Meinke, 181 Neb. 648, 150 N. W. 2d 256.

There was no dispute whatever but that a statement to the driver about a stop sign was made by the passenger Campbell. His direct testimony as to the wording was: " 'I think we passed a stop sign back there.' " The driver responded: " 'Did I?' " and then the accident happened. On cross-examination, Campbell conceded that he might have, or probably did, testify under oath in a previous proceeding that he saw a stop sign ahead and that he believed he said: " 'There is a stop sign ahead,' "

and that he did not recall any response from the driver. Campbell also conceded, without reference to any statements, that he may have seen the sign that said "Stop Ahead" but did not recall specifically, or may have looked at it but it did not register in his mind. All of this evidence was admitted without objection. The majority opinion terms the evidence on cross-examination "admitted only for the purpose of impeachment" and, in effect, holds that no inference could be drawn that the statement as to a stop sign was made at any earlier time, or in any different form than that testified to on direct examination.

There was considerably more involved here than momentary inattention or inadvertence, even aside from the problem of a warning. Certain facts are undisputed. The radio in the car was not on. There was no conversation in the automobile to divert the driver's attention in any respect. The accident occurred about 10 p.m. The driver drove past a reflectorized "Pavement Ends" sign 1,000 feet west of the intersection at which he expected to turn. He passed a reflectorized "Stop Ahead" sign approximately 400 feet from the intersection. He drove through a reflectorized "Stop" sign at the intersection. He failed to see the headlights of another vehicle approaching the intersection at approximately the same time. A statement was made about a stop sign by the passenger Campbell but the driver never applied his brakes. At no time during the entire 1,000 feet traveled did the defendant Fischer change or reduce his speed or apply his brakes.

The majority opinion here divides the total factual picture into segments and relies upon prior cases holding certain facts insufficient to establish gross negligence. Callen v. Knopp, 180 Neb. 421, 143 N. W. 2d 266, is relied on to establish that failure to see a stop sign or the Peterson automobile was not gross negligence. In that case, the accident was in the daytime and the driver was driving on an arterial street generally protected by

stop signs. He did not realize he was entering an intersection where there was a stop sign on the arterial, and was looking in the opposite direction from the approaching vehicle. Under such circumstances, his negligence was characterized as momentary in nature rather than persisting over a period of time.

Boismier v. Maragues, 176 Neb. 547, 126 N. W. 2d 844, is relied on to establish that failure to observe warning signs is not gross negligence. In that case, the accident was at night and involved a "T" intersection, and no other vehicles. None of the signs involved any illumination qualities; the location of the only sign apparently not at the intersection itself was not shown; and the driver put on his brakes as soon as he recognized the danger ahead.

In Carley v. Meinke, *supra,* this court held that while each of several acts standing alone may not exceed the bounds of ordinary negligence, yet, when considered together, they may constitute evidence of gross negligence. In such a case, whether or not gross negligence exists is for the jury.

Where the violation of a stop sign is intentional or where there are other breaches of the host driver's duties in conjunction with a failure to stop for a stop sign, the situation may well be one in which a jury might properly find gross negligence. See Annotation, 3 A. L. R. 3d 180, particularly sections 42 and 43 at page 430.

Negligence and gross negligence cannot be determined in the abstract. "The rule is that in each case the existence or nonexistence of gross negligence must be ascertained from the facts of each particular case, and that in case of doubt the existence of evidence as to gross negligence must be resolved in favor of its existence in which event the question is for the jury, otherwise it is one of law for the court." Boismier v. Maragues, *supra.*

It should also be obvious that standards of care by which both negligence and gross negligence are measured may, and do, change with the passage of time and the de-

velopment and experience of society. Negligence and gross negligence, and standards of due care are all grounded on the legal concept of the "reasonable man." "The reasonable man" should not be bound in a legal straitjacket laced with prior precedents. Under the facts in this case, this court should not say, as a matter of law, that there was insufficient evidence upon which a jury could properly find there was gross negligence on the part of Fischer. The issue was properly submitted to the jury by the trial court and the defendant Fischer's motion for judgment notwithstanding the verdict was properly overruled.

The majority opinion also holds that a hypothetical question as to the rate of speed of a vehicle, put to an expert witness, must include all factors necessary for a reasonably accurate opinion. The opinion also concludes that the testimony of an expert witness, who was an Associate Professor of Engineering Mechanics, was essentially a mathematical computation in which it was necessary to determine a large number of factors and variables, none of which can be assumed, and all of which must be established by the evidence. This approach treats expert testimony in the field of physics as though it were an exact science which did not involve elements of knowledge, skill, or experience in applying its laws to the specific factual circumstances of an automobile accident. This position also requires a court to be expert itself in every field in which an expert witness may testify in order to determine what factors are necessary for the witness to give a reasonably accurate opinion.

It is conceded by the majority opinion that various factors, such as skid marks, distance traveled after impact, and force of impact, constitute pertinent evidence in arriving at an estimate of the rate of speed of an automobile. The answer to the objections that some necessary factors were not established is found in the record.

The expert witness conducted a skid test at approximately the same location, on the same highway, approximately 1 year after the accident. The length of skid marks of all four wheels to the point of impact was established. The point of impact on the highway and the point of impact of the Peterson vehicle on the Fischer vehicle were established. The physical movement and relative distance and direction of movement of both vehicles after the impact were established. The weight of both vehicles, the speed of the Fischer automobile, and the relative directions of movement of both vehicles prior to impact were established. The physical marks on the highway following the impact were established. Photographs of both vehicles were examined. All of these factors were taken into account in the testimony of the expert witness. In response to cross-examination as to the effect of application of brakes continuing after the collision, the effect of striking other objects, or of parts dragging on the roadway and similar matters, they were all conceded to have some effect on some methods of computations, but that if any allowances were made for such factors, it would increase the minimum speed of the automobile to be determined. The expert witness explained that the method he used did not make any adjustment for such factors for that reason. His opinion was that the minimum speed of the Peterson vehicle at the time it commenced to skid would be 57 miles an hour, plus or minus 5 miles an hour, or an absolute minimum speed of 52 miles per hour. Neither his opinion nor his assumptions were contradicted in any way by any other expert witness.

The majority opinion also holds that such opinion evidence should be excluded whenever the point is reached at which the trier of fact is being told that which it is itself entirely equipped to determine. The same objection might be made as to any expert opinion evidence as to speed. The basic question is whether or not the testimony of an expert witness will be of aid to the jury

in determining the facts it is required to determine, and ordinarily the trial court has broad discretion in determining that basic issue.

Whether the opinion of a qualified expert witness is based on sufficient facts or evidence to sustain it is a question of law for the court. The dividing line is difficult to determine. In this case, the opinion of the expert witness was based on and supported by sufficient facts and evidence to sustain it. The objections sustained by the majority opinion go to issues of credibility rather than to admissibility.