ANDREW R. MOATS, ADMINISTRATOR OF THE ESTATE OF MARVIN A. MOATS, DECEASED, APPELLEE, v. ARNOLD C. LIENEMANN, ADMINISTRATOR OF THE ESTATE OF JOHN B. LIENEMANN, DECEASED, APPELLANT.

197 N. W. 2d 377

Filed May 12, 1972. No. 38290.

Healey, Healey, Brown & Burchard, Deutsch & Hagen, Thomas H. DeLay, and Mark A. Buchholz, for appellant.

Nelson, Harding, Marchetti, Leonard & Tate, Kenneth Cobb, Hutton, Hutton & Garden, and Richard H. Williams, for appellee.

Heard before SPENCER, SMITH, and NEWTON, JJ., and CHADDERDON and C. THOMAS WHITE, District Judges.

CHADDERDON, District Judge.

This is an action by Andrew R. Moats, administrator of the estate of Marvin A. Moats, deceased, hereinafter called plaintiff, against Arnold C. Lienemann, administrator of the estate of John B. Lienemann, deceased, hereinafter called defendant, for the wrongful death of Marvin A. Moats as a result of a collision of a car driven by Marvin A. Moats and a car driven by John B. Lienemann. Marvin A. Moats, deceased, will be hereinafter called Moats, and John B. Lienemann, deceased, will be hereinafter called Lienemann. The jury returned a verdict for plaintiff for $46,037.12. We affirm the judgment of the district court.

Assignments of error Nos. 1, 2, 3, 4, and 5 go to the sufficiency of the evidence and will be considered together. In considering these assignments of error we must look to the former decisions of this court. In Lund v. Mangelson, 183 Neb. 99, 158 N. W. 2d 223, the court said: "In every case before the evidence is submitted to the jury, there is a preliminary question for the court to decide, when properly raised, not whether there is literally no evidence, but whether there is any upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the burden of proof

is imposed. Weston v. Gold & Co., 167 Neb. 692, 94 N. W. 2d 380.

"A motion for directed verdict or for judgment notwithstanding the verdict must be treated as an admission of the truth of all material and relevant evidence submitted on behalf of the party against whom the motion is directed. Such party is entitled to have every controverted fact resolved in his favor and to have the benefit of every inference that can reasonably be deduced from the evidence. Egenberger v. National Alfalfa Dehydrating & Milling Co., 164 Neb. 704, 83 N. W. 2d 523."

In Flanagin v. DePriest, 182 Neb. 776, 157 N. W. 2d 389, this court said: "In determining the question of whether the evidence is sufficient to submit the issues of negligence and contributory negligence to the jury, a party is entitled to have all conflicts in the evidence resolved in his favor and the benefit of every reasonable inference that may be deduced from the evidence, and if reasonable minds might draw different conclusions from a set of facts thus resolved in favor of a party, the issues of negligence and contributory negligence are for a jury."

In Wright v. Haffke, *ante* p. 270, 196 N. W. 2d 176, the court said: " 'A jury verdict based upon conflicting evidence will not be set aside unless it is so clearly wrong as to induce the belief on the part of the reviewing court that it must have been found through passion, prejudice, mistake, or some means not apparent in the record.' Satterfield v. Watland, 180 Neb. 386, 143 N. W. 2d 124."

The autopsy revealed that Lienemann died as a result of a ruptured aorta probably caused by broken ribs, and that he had a blood clot in the brain which had been there before the accident occurred.

The defense of the defendant was that Lienemann was suddenly stricken by illness, which he had no reason to anticipate, while driving an automobile, which rendered it impossible for him to control the car and is, therefore, not chargeable with negligence. The defend-

ant argued that the basis for the jury verdict was the result of speculation and conjecture.

The jury could have found from the evidence that Lienemann was driving his car north on U.S. Highway No. 81 north of Norfolk, Nebraska, at approximately 8:45 p.m. The road was concrete paved, 24 feet wide, dry, and with a slight incline from the south to the north. At a point approximately 3 miles north of Norfolk the right wheels of Lienemann's car left the pavement on the east side for .3 mile when the left side of the car left the pavement. The car continued in the ditch for some distance where it jumped a drainage ditch and was in the air for 42 feet. It continued on some distance where it grazed a fence on the east side of the ditch, then veered to the west onto the pavement, and never again left the paved surface from that point to where it struck head-on the car of Moats, which was a distance of 3,800 feet. As a result of the accident both Moats and Lienemann were killed. After Lienemann's car returned to the pavement, it continued north in the west lane and at least the driver of one car avoided it by going on the shoulder of the road. Just before Lienemann's car came to a control ditch bridge it turned to the east lane and passed a car, the driver of which had stopped it on the bridge and had started to back up because he had seen Lienemann's car in his lane of traffic. Lienemann's car continued north across a bridge of the North Fork of the Elkhorn River to a point a short distance south of a road which is the boundary between Madison and Pierce Counties where it turned into the west lane. A car he was meeting swerved to the east lane to miss his car, and then Lienemann's car ran head-on into Moat's car at a point .1 mile north of the county line road. From the place the right wheels of Lienemann's car first left the paved surface to the point of impact it was at least 1.2 miles.

The medical testimony regarding the ability of Lienemann to control his car is conflicting, but the jury could

have found from this testimony that in order to drive the car the distance of 3,800 feet from the place where he returned to the highway after being in the ditch and not thereafter having left the 24-foot paved road, he had the ability to control the car, which would include the ability to stop the car, and that such action on his part is evidence of negligence.

In the light of the cited cases and the evidence we find that the trial court did not err in overruling the defendant's motion for directed verdict at the end of the testimony, for judgment notwithstanding the verdict, or for a new trial, and that the verdict was not contrary to the evidence and to the law.

Assignments of error Nos. 6, 10, 11, and 12 are the claimed errors of the trial court in sustaining objections to questions on cross-examination. These questions were either argumentative, did not reflect a true statement of the evidence by other witnesses, or were indefinite, and the law is so firmly established on these points that it does not require the citation of cases thereon.

Assignments of error Nos. 7, 8 and 9 have to do with hypothetical questions asked by the plaintiff of the doctors and the overruling of objections to these questions by the trial court. In considering these assignments we must consider the case of Jacobson v. Skinner Packing Co., 118 Neb. 711, 226 N. W. 2d 321, wherein the court said: " 'Hypothetical questions propounded to an expert, if so framed as to fairly and reasonably reflect the facts proved by any of the witnesses in the case, will be sufficient, provided the subject is one proper for expert testimony.' " Without going into detail regarding these questions, we find that they fairly and reasonably reflected the facts proved by the other witnesses in this case, and that the trial court was not in error in overruling the objections to these questions.

In his brief the defendant cites Jacobson v. Skinner Packing Co., *supra,* and Brugh v. Peterson, 183 Neb. 190, 159 N. W. 2d 321.

In Jacobson v. Skinner Packing Co., *supra,* the court found: the witness "was not shown to have proper information upon which to base an estimate . . .." In Brugh v. Peterson, *supra,* in ruling on an answer to a hypothetical question as to the speed of a vehicle, the court said: ". . . the expert opinion depends upon the resolution of so many variables that it is, in effect, a statement of a possibility. Under the circumstances in this case the expert testimony was neither necessary nor advisable as an aid to the jury."

We find that this case was fairly and impartially tried, that the verdict of the jury was based upon sufficient evidence to find for the plaintiff, and that the verdict of the jury was not the result of speculation or conjecture.

AFFIRMED.