CHARLES HILFERTY ET AL., APPELLANTS, V. RAY MICKELS, APPELLEE.

106 N. W. 2d 40

Filed November 18, 1960. No. 34840.

*McGinley, Lane, Shanahan & McGinley,* for appellants.

*George B. Hastings* and *Frederick W. Wanek,* for appellee.

Heard before CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

BOSLAUGH, J.

This is an appeal from a judgment for property damage rendered against Charles Hilferty in favor of ap-

pellee on his counterclaim for damages caused, as he claimed, by a collision of the automobile negligently operated by Charles Hilferty with an automobile operated by appellee and from an order of the district court overruling the motion of appellants for a new trial.

The substance of the petition of appellants to the extent it is required to be recited herein was as follows: Appellants owned a Dodge sedan automobile, hereafter designated the Dodge, which was operated by Charles Hilferty in the forenoon on or about February 1, 1959, on a north-and-south county highway about 3.5 miles east and 6.2 miles south of Madrid. He entered upon the county highway to travel towards the north at which time he saw appellee approaching in a Ford sedan automobile, hereafter designated the Ford, on the left or east side of the highway moving towards the south at a high and excessive rate of speed, considering the condition of the highway. Appellee did not have the Ford under control and he caused or permitted it to collide with the Dodge which had been stopped in the east lane of the highway. The Dodge was damaged by the collision caused by the negligence of appellee specified in the petition as follows: Operating the Ford on the left side of the center of the highway at an excessive speed, considering the condition of the highway and the traffic thereon; failing to respect the right-of-way of appellant to be and travel upon the right or east side of the highway; failing to maintain a proper lookout for other vehicles on the highway; and failing to have and keep the Ford under control so as to avoid a collision with the Dodge which was in plain sight and properly upon the east lane of the highway. Appellants asked judgment for $460.75 against appellee.

Appellee by answer in substance admitted the operation and the collision of the Dodge and the Ford at the time alleged in the petition; denied all other claims made therein; and pleaded contributory negligence more than slight of Charles Hilferty, hereafter referred to

as appellant, as the cause of the collision. Appellee interposed a cross-petition in which he by reference incorporated the contents of his answer as part of it and in substance further stated therein the following: Appellee before the collision of the Dodge and the Ford was operating the latter on the county highway towards the south in a prudent manner at a lawful speed in view of the condition of the highway, and when he was about 200 feet north of the place where the county road and a private farm lane extending from the east intersected the county highway appellee saw the Dodge proceeding towards it from the east about 15 feet from the county highway. An earlier view of the Dodge traveling on the private road was prevented by continuous trees which extended north from it on the east of the county highway for a distance of approximately 200 feet. Appellant did not stop before proceeding from the private lane onto and upon the county highway but in violation of the requirement of the law in that respect entered upon the county highway and commenced a turn to the north or right and proceeded in such a manner that he reached and traveled on the west side of the county highway which was then occupied and used by appellee as he traveled thereon towards the south. Appellee applied the brakes of the Ford but was unable to avoid a collision with the Dodge. Appellant negligently drove the Dodge into and against the Ford causing damage to it. The cause of the collision was the negligence of appellant which was specified in substance as follows: Failure to keep a reasonable lookout for vehicles traveling on the frequently used county highway of which appellant had knowledge; failure to have the Dodge under control so that he could have stopped it at the intersection of the private road with the county highway and thereby have yielded the right-of-way as required by section 39-752, R. R. S. 1943; failure of appellant to prevent the Dodge from going upon the west part of the county

highway in the path of the Ford which was then rightfully occupied and used by the Ford and which was in plain sight of appellant; failure of appellant to stop the Dodge before entering upon the county highway from the private lane and thereby have avoided a collision by it with the Ford which was traveling on the county highway in plain view of appellant; failure of appellant to look to the north before driving the Dodge upon the county highway or a failure, if he did look to the north, to see the Ford on the highway moving to the south in close proximity to appellant; and failure of appellant to operate the Dodge before and at the time of the collision in a careful and reasonable manner so as not to endanger or injure appellee. The Ford was because of the negligence of appellant damaged in the sum of $375.62 for which appellee asked judgment.

A jury trial of the issues of the case was waived and the parties by stipulation consented to a trial thereof by the court without the presence or participation of a jury. The district court found generally against appellant and in favor of appellee and that the cause of the collision and damage sustained by appellee was the negligence of appellant in entering the county highway from the private lane without yielding the right-of-way to appellee. A judgment was rendered for appellee against appellant for $375.62, interest, and costs.

This is an action at law tried and determined by the district court by stipulation of the parties without the presence or participation of a jury. Its findings have the effect of a verdict of a jury and may not be disturbed unless they are clearly wrong. This court may not resolve conflicts in or weigh evidence in such a case. In reviewing the judgment rendered this court will conclusively presume that controverted facts were decided by the trial court in favor of the successful party and its conclusion will not be set aside unless it is clearly wrong. In considering it, if the evidence sustains the findings and judgment in such a case tried

without a jury, the evidence will be considered most favorably to the successful litigant and the benefit of reasonable inferences deducible therefrom will be accorded him. This court in reviewing and deciding an appeal in such a case will regard as established every fact favorable to the successful party which the evidence proves or tends to establish. Grant v. Williams, 158 Neb. 107, 62 N. W. 2d 532; Dunbier v. Stanton, 170 Neb. 541, 103 N. W. 2d 797.

It is in observance of these requirements that the evidence is summarized: Appellee at about 9:30 o'clock on the morning of February 1, 1959, accompanied by his wife, left their home about 10½ miles from the place where the accident involved in this case occurred. They were commencing an intended trip to Stratton. They traveled south in the Ford operated by appellee on a county highway which extended north and south, the traveled portion of which was about 18 feet wide. It was a nice, clear day. The trip from their home to near the place of the collision was without unusual incident and during that time the speed of the Ford was about 45 or 50 miles per hour and not more than the latter. The speedometer 1 mile north of where the accident happened showed its speed was 48 or 49 miles per hour. It was about 10½ miles between the home of appellee and the John Hilferty farm which was on the east side of the county highway on which appellee was traveling that morning. The collision happened at 10:10 a. m. The continuous driving time of appellee in going the 10½ miles from his home to the place of the accident was about 40 minutes. On the John Hilferty farm there was a private lane which extended from the east to the west and joined the county highway on the east. The private lane was about 16 feet wide until it approached the county highway and then it fanned out to the north and south until it was about 30 feet where it came to the east side of the county highway. On the north of the private lane extending east

from the east side of the county highway for about 400 feet were trees. Likewise from the north side of the private lane north along the east side of the county highway were trees for a distance of at least 300 feet. The trees were continuous and obstructed vision of the private lane or a vehicle thereon from a traveler on the county highway moving towards the south until he was at or past the trees along the east side of the highway. The surface of the county highway was spoken of as graveled. However, a state patrolman testified the road was supposed to be graveled but he could not detect any gravel on it and he classed it as dirt. Another witness described it as a good country road, portions of which had been graded and parts of which had not been graded. The surface of the highway west of the trees along the east of it was on the day of the accident covered with ice with a light snow on the ice and frost on the snow. The surface of the highway at that area was very slippery where the traffic had traveled on it.

When appellee was an estimated 200 feet north of the north part of the trees which were east of the highway he noticed ice thereon about opposite where the trees commenced. This condition continued to the south for about 300 feet. He removed his foot from the accelerator of the Ford and permitted it to coast. Its rate of speed decreased when it reached the location in the road where the ice and snow commenced until its speed was between 35 and 40 miles per hour. When appellee was about 200 feet north of the private lane he saw for the first time an automobile operated on it towards the west approaching the county highway and he then applied the brakes on the Ford. He watched the automobile on the private lane, which was the Dodge, and he noticed that it was not stopping. It was moving about 10 miles per hour and he could not see that its speed had decreased from what it was when he first saw it. Appellee as he traveled south on the ice and

snow on the highway followed the tracks thereon that had been made by previous traffic which were about in the center of the traveled portion of the highway and he continued to travel in that position until the collision. There is no evidence that there was any traffic on the highway that morning as appellee traveled south. The highway was straight and level and there was no obstruction to view of the highway to the north of the private lane for at least a half mile or of the highway to the south from the private lane for at least 60 or 70 rods. When appellee saw that appellant was going to enter the highway without stopping the Dodge, appellee severely applied the brakes on the Ford and did all he could to drive it to the right or the west part of the highway. He was not successful because of its condition.

Appellant did not stop the Dodge before he entered the highway but drove it at a speed of about 10 miles per hour on and from the private lane to and upon the highway and was attempting to make a turn to the north which was not completed when the Dodge and the Ford collided. The impact of the cars was on their respective left fronts. Probably 150 feet from where the automobiles came in contact appellee applied the brakes on the Ford severely. They were in proper condition but they were ineffective because of the condition of the surface of the highway except the speed of the Ford was somewhat decreased. At the time appellee was attempting to drive the Ford to the west part of the highway and at the time of the impact of the automobiles the speed of the Ford was not more than 15 miles per hour. Appellee testified that the Dodge had not completed the turn to the north, that the left side of it was in the west lane of the highway at least 8 inches, and that is where it was struck. A witness produced by appellee testified that the Dodge was not entirely in the east lane of the highway as it attempted to make the turn to the north. The front

wheels of the Dodge were turned to the right as they would have been in making a turn of it to the north at the time of the collision and the left front wheel was firmly held in that position by part of the Dodge which was forced against it by the impact. The wheel could not be moved until the part that was bearing on it was taken off by considerable mechanical force. The Ford stopped in the highway at the time of the impact. There were 4 feet 4 inches between the automobiles when they came to rest after the collision. The Dodge at the time of the collision was in front or opposite the west end of the private lane. Appellant when he was on the north half of the private lane where it fans out on its north side as it approaches the county highway, first saw appellee 700 or 800 feet to the north coming towards appellant in the middle or on the east side of the highway, traveling at a speed of 70 or 75 miles per hour. He later said when he first saw appellee he was about 600 or 700 feet but not less than 600 feet away and that he traveled at least a quarter of a mile while appellant traveled 30 feet.

Appellee marked on a photograph taken soon after the collision before there had been any change in the situation the location on the highway of the Ford as it traveled south to the place of the collision and this shows that it traveled in about the center of the highway.

A member of the State Highway Patrol who was at the scene of the accident before the automobiles concerned in it had been moved or any other change made, said there were skid marks on the highway north from the Ford for 173 feet; that the left wheel marks of the Ford were 6½ feet from the east shoulder of the highway and the right wheel marks of the Ford were 6 feet from the west shoulder of the highway; that these measurements were made from the outer edges of the part of the highway that was used for traffic and the width of this part of the highway was 18 feet; that the distance

from the left front of the Dodge to the edge of the west shoulder of the highway was 10 feet; that the distance from the midsection of the right side of the Dodge to the edge of the east shoulder of the highway was $2\frac{1}{2}$ feet; that it was $8\frac{1}{3}$ feet from the east edge of the highway to the center of the debris which the witness found on the highway near where the automobiles came to rest after the collision; and that the impact of the automobiles was not a full head-on collision but was what the patrolman called a semi head-on in which one vehicle strikes a part of the front of another vehicle. The area of the impact of the front of the automobiles in this instance was quite limited and involved about 18 inches of the width of the front of them.

A witness said he saw the Ford about 400 feet north of the place of the collision traveling south in the center of the highway; that as it approached the Dodge the brakes of the Ford were applied and the back of it swerved and it slid into the Dodge; and that more than half of the width of the Ford when it collided with the Dodge was on the east side of the highway in the east lane.

Appellee was about 200 feet north of the commencement of the icy condition of the surface of the highway when he saw and recognized this hazard to safe passage over it. He had been proceeding at a speed of 45 or 50 miles per hour and he released the accelerator on his Ford and let it coast so that when it reached the commencement of the slippery part of the highway the speed of the Ford was decreased to 35 or 40 miles per hour. The road condition was so hazardous that appellee deemed it prudent to utilize the tracks other traffic had made along either side of the center of the usable part of the highway which was 18 feet wide. This appellee did and he was in that position with the Ford traveling on the center part of the road for about 300 feet until the collision happened. When appellee was about 200 feet north of the private lane he saw the

Dodge approaching the highway and he lightly applied the brakes on the Ford by pumping them. He estimated that when he was 100 or 150 feet from the private driveway he was convinced that the Dodge was not going to stop before it entered thereon and then for the first time appellee forcibly and severely applied the brakes on the Ford. The record does not state the speed of it at that time but it does indicate that the estimate of distance made by appellee was incorrect because the wheel or tire skid marks made by the Ford from the north to the rear wheels of it when it came to rest at the time of the impact were 173 feet in length. During that distance the brakes were applied sufficiently to stop the wheels rotating so that they skidded on the surface. Appellee said he was then unsuccessfully attempting to drive the Ford to the west side of the highway because the brakes were ineffective to stop or to help control the Ford on account of the slippery condition of the surface but the speed of the Ford was reduced some, how much was not estimated.

The speed of the Ford was not at any time in excess of the prima facie limits allowed by the statute. § 39-7,108, R. R. S. 1943. However, that statute contains other specifications for prudent and reasonable speed of motor vehicles in the language of the following parts of it: "* * * The fact that the speed of a vehicle is lower than the foregoing prima facie limits shall not relieve the driver from the duty to decrease speed * * * when special hazards exist * * * by reason of weather or highway conditions, and speed shall be decreased as may be necessary to avoid colliding with any person, vehicle or other conveyance on or entering the highway in compliance with legal requirements and the duty of all persons to use due care * * *." Lawfulness of the speed of a motor vehicle within the prima facie limits fixed is determined by the further test of whether the speed was greater than was reasonable and prudent under the conditions then existing.

What is a reasonable speed is necessarily largely de-
pendent on the situation and the surrounding circum-
stances, it being obvious that a speed which would be
safe, reasonable, and proper in some places and under
some circumstances might be highly dangerous, un-
reasonable, and improper in other places and under other
circumstances. The speed of an automobile may be
unlawful even though it is within the statutory prima
facie limits if it is unsafe or is greater than is reason-
able and prudent under the existing conditions. Davis
v. Dennert, 162 Neb. 65, 75 N. W. 2d 112; Maska v.
Stoll, 163 Neb. 857, 81 N. W. 2d 571; Olson v. Shelling-
ton, 167 Neb. 564, 94 N. W. 2d 20.

The existing conditions of which appellee had knowl-
edge were such that the speed of the Ford prevented
its brakes from performing the purpose for which they
were furnished as a necessary equipment of the vehicle.
The speed of it was sufficient to prevent control of or
the turning or driving of the Ford in such a manner as
to avoid a collision with the Dodge although the dis-
tance between the automobiles when the necessity there-
for was known was at least 200 feet. The speed was such
that the driver of the automobile, of more than 40
years' experience, could not or did not stop it. It could
not be controlled or diverted to some other position
on the highway in the distance above stated. It is the
duty of all persons in the operation of an automobile
to use due or reasonable care to prevent accident or
injury. The user of a highway is required to use rea-
sonable care, considering the existing conditions and
circumstances. The driver of a motor vehicle has the
duty to keep a proper lookout and watch where he is
driving even though he is rightfully on the highway
and has the right-of-way or he is driving on the side of
the highway where he has a lawful right to be. He
must keep a lookout ahead or in the direction of travel
or in the direction from which others may be expected
to approach, and is bound to take notice of the road,

to observe conditions along the highway, and to know what is in front of him for a reasonable distance. Murray v. Pearson Appliance Store, 155 Neb. 860, 54 N. W. 2d 250. The existence of negligence is a question of fact and may be found from circumstantial evidence and ·physical facts if they indicate with reasonable certainty the negligence charged. This is true as to a charge of speed as well as any other specification of negligence. Circumstances or physical facts or both concerning an accident may be sufficient to overcome direct evidence as to the speed of an automobile involved therein. Coyle v. Stopak, 165 Neb. 594, 86 N. W. 2d 758. The speed or control of the Ford as shown by the circumstances of this case was neither reasonable nor prudent under the existing circumstances.

Appellee said when he came to the ice-covered portion of the highway he saw that several cars had been through there and they made one track close to the middle of the road and he naturally followed that track. He also said that he did not know his location on the highway at the time of the collision until measurements had been made. He thought before that he was on his side (the west side) of the highway. The statute, subject to exceptions, requires the driver of a vehicle to drive it upon the right half of the highway. § 39-746, R. R. S. 1943. Drivers of vehicles traveling in opposite directions are required to pass on the right, each giving to the other half of the main-traveled portion of the roadway as nearly as possible. § 39-748, R. R. S. 1943. Appellee operated the Ford down the center of the highway from north to south a distance of about 300 feet immediately before and at the time the automobiles came in contact. The contact of the automobiles was near the very center of the highway. There is no showing in the record that the highway was in any better or safer condition for traveling in the center of it than it was in the west or the right lane of the highway. The reason appellee gave for traveling in the

center of it was that several cars had done so and naturally or as a matter of course or custom he followed that conduct in that regard. The observance of a practice or custom which is contrary to a statute upon the subject does not prevent a motorist from being guilty of a violation of the statute. Mann v. Standard Oil Co., 129 Neb. 226, 261 N. W. 168. The record is convincing that appellee was continuously occupying and using the center of the highway from the place where the ice commenced on it for a distance of about 300 feet to the place and time of the accident, including the distance he traveled after he said he knew appellant was not going to stop before he moved from the private lane onto the highway. The statement in Callahan v. Prewitt, 141 Neb. 243, 3 N. W. 2d 435, is not wholly inappropriate to this situation: "The defendant contended that when he first saw the Doerfler car they were about 550 feet apart, and Doerfler was driving on the wrong side of the road, but defendant did not pull over clear to the right, or pull over clear to the left of the center line, but continued right down the middle of the road; in other words, it appears that he did the only thing he could do to insure that an accident would occur." The conduct of appellee in the respect last discussed was a total disregard under the circumstances of this case of the prudence and due care which the law exacts of a motorist.

Appellee argues that appellant was required by the law of the road to yield the right-of-way to all vehicles approaching on the public highway because appellant was moving from a private driveway to and upon a public highway. Appellee says it was the duty of appellant to have yielded the right-of-way upon such county highway to appellee. Appellee further says that the finding of the trial court that the sole and proximate cause of the collision and the damage was the negligence of appellant in entering a county highway from a private lane without yielding the right-of-way

to appellee was the only reasonable conclusion that could have been reached in this case. Implicit in these statements is the idea that the right-of-way to which appellee was entitled extended to and included the whole of the county highway. The relevant statute, section 39-752, R. R. S. 1943, provides in part: "The driver of a vehicle entering a public highway from a private road or drive shall yield the right of way to all vehicles approaching on such public highway."

In Klaus v. Soloman Valley Stage Lines Co., 130 Neb. 325, 264 N. W. 747, this court said: "A driver upon a public highway at a lawful and reasonable rate of speed has the right of way over vehicles entering the highway from a private road or drive, and is not required to slow down or stop upon the appearance of such other vehicle about to enter the highway until it should appear to a reasonable person in his position that the driver of such vehicle was not going to comply with the law and yield the right of way." See, also, Kohrt v. Hammond, 160 Neb. 347, 70 N. W. 2d 102.

It is not every traveler upon a public highway, then, who is entitled to the right-of-way over one entering from a private lane or drive because by the reference above made such right is limited to a driver on a public highway who is traveling at a reasonable and lawful rate of speed. The court also observed in Klaus v. Soloman Valley Stage Lines Co., *supra,* the following: "This involves a consideration of the duties which a driver upon a public highway owes to persons entering upon such highway from a private driveway. Generally speaking they are: To drive at a reasonable rate of speed, to keep a proper lookout, and to avoid a collision if it can be done by the exercise of ordinary care."

Bainter v. Appel, 124 Neb. 40, 245 N. W. 16, considered the right-of-way of a motorist who was traveling west on the north or right lane of a highway in a cloud of dust and was struck by an eastbound truck which encroached upon the north lane of the highway. The

court said: "In the present case the car of plaintiff was correctly placed and at the time of the impact, as well as prior thereto, was traveling in a lawful manner where and as the terms of this enactment directed. Plaintiff, then, as to the north half of this highway, had the exclusive statutory right of way as against eastbound traffic thereon."

Carley v. Zeigler, 156 Cal. App. 2d 643, 320 P. 2d 165, considered these facts: The accident took place in the east half of Snyder Lane, a county highway which extended north and south. Carley admitted he was driving down the center of Snyder Lane in a southerly direction when his automobile struck a milk truck being operated by Zeigler which entered Snyder Lane from a private driveway on the east and was turning north thereon. The front wheels of the truck were from 2 to 4 feet from the east edge of Snyder Lane when it was struck by the automobile of Carley. A provision of the Vehicle Code of California provided that the driver of a vehicle about to enter or cross a highway from any private road or driveway shall yield the right-of-way to all vehicles approaching on such a highway. The court said: "A truck driver entering a highway from a private driveway on the east and turning north was not required to yield the right of way to the east half of the highway to a vehicle being driven down the center of the highway in a southerly direction; the driver of the other vehicle only had the right of way to the west half of the highway. * * * A right of way does not include a right to encroach on that half of a highway on which cars coming from the opposite direction are entitled to travel. * * * Before a vehicle driver is entitled to the right of way he must be operating his vehicle within the law and not in violation thereof; if he drives down the center of the highway without excuse or justification in violation of Veh. Code, § 525, declaring that a vehicle shall be driven on the right half of the roadway, he does not have the right of way." In the

opinion the court said: "The accident herein occurred in the east half of Snyder Lane where respondent (Carley) had no right to be. Appellant (Zeigler) had no duty to yield 'the right of way' to the east half of Snyder Lane. Respondent only had the 'right of way' to the west half of Snyder Lane. The 'right of way' does not include a right to encroach upon that half of the highway upon which cars coming from the opposite direction are entitled to travel. * * * Moreover, 'before the driver of any vehicle is entitled to the right of way such driver himself must be operating his vehicle within the law and not in violation thereof.' (Hayes v. Emerson, 110 Cal. App. 470, 477 [294 P. 765].)." See, also, Hemrich v. Koch, 177 Wash. 272, 31 P. 2d 529; Dyer v. Wallner, 189 Wash. 486, 65 P. 2d 1281; Berman v. King Union Co., Inc., 80 R. I. 181, 94 A. 2d 428.

The statute concerning right-of-way of a vehicle traveling upon a public highway over a vehicle entering it from a private lane quoted above does not mean that any vehicle traveling on any part of the highway in any manner, however negligently approaching the private drive, has the right-of-way in the entire highway. It is the driver of a vehicle on a public highway approaching a private drive who is proceeding in his proper lane of travel in a prudent and reasonable manner, as the law requires, who is entitled to the right-of-way provided for by the statute. The right-of-way which the statute makes available does not include a right to encroach on the half or part of a highway on which traffic coming from the opposite direction is entitled to travel. A provision of law granting a right-of-way to a user of a highway is generally not absolute but relative and subject to the qualification that the person entitled to claim the right will exercise it with proper regard for the safety of himself and others.

Appellee was, under the circumstances of this case, guilty of negligence as a matter of law which was a

proximate cause of the collision involved herein and he may not in any event have a recovery of damages on his cross-petition. However, the amount of damages sustained by appellant is an issue of fact to be tried and determined and, because of matters hereinbefore set out, is subject to the defense of contributory negligence of appellant. Because of the comparative negligence statute, even though appellee was guilty of negligence as a matter of law and if it may be found that appellant was guilty of only slight negligence, the question of whether or not the negligence of appellee was gross in comparison therewith would still be a factual one for determination of the trier of the facts. Bezdek v. Patrick, 170 Neb. 522, 103 N. W. 2d 318.

The judgment should be and is reversed and the cause is remanded to the district court for Perkins County for further proceedings according to law.

REVERSED AND REMANDED.

SIMMONS, C. J., participating on briefs.