Charles V. **LALICKER**, Appellant
(Plaintiff below),

v.

Wayne R. **HALLIGAN**, Appellee
(Defendant below).

No. 3817.

Supreme Court of Wyoming.

Nov. 18, 1970.

William S. Bon, Casper, for appellant.

David A. Scott, of Murane, Bostwick, McDaniel, Scott, & Greenlee, Casper, for appellee.

Before GRAY, C. J., and McINTYRE, PARKER and McEWAN, JJ.

Mr. Justice McINTYRE delivered the opinion of the court.

Charles V. Lalicker owned a tractor and dump trailer truck unit which he leased

to Northwestern Engineering Company for the hauling of gravel. Richard Darling, while driving the gravel truck unit for lessee, had a collision with Wayne R. Halligan who was driving a 3-ton water truck. Lalicker, owner of the gravel truck, sued Halligan for damages to his gravel truck unit.

Trial was had to the court without a jury and the trial court found in favor of Halligan, the defendant. Lalicker, the plaintiff, has appealed.

It must be kept in mind that the plaintiff who owned the gravel truck unit was not himself involved in the accident. Therefore, there is no issue of contributory negligence. As far as this suit is concerned, neither Darling nor Northwestern Engineering was made a party and we are not required to decide whether Darling or his employer can be made to contribute to plaintiff's damages.

The sole issue is whether Halligan, driver of the water truck, was negligent to any extent at all and whether such negligence was a proximate cause of the accident. If Halligan and Darling were thought of as equally to blame for the accident, Halligan would have to respond in damages to plaintiff. Indeed, if both were thought of as partly to blame, then the defendant would still have to answer to plaintiff in damages even if Darling was more to blame than the defendant.

Our review of the evidence convinces us Halligan was negligent as a matter of law and at least partially to blame for the accident. His evidence, we think, failed to excuse his acts and failed to fix the blame for the accident wholly on Darling.

### The Facts

Northwestern Engineering had a contract to gravel a state secondary road in the vicinity of Yoder, Wyoming. Darling was traveling westward with a load of gravel. He was on the side of the highway to his right. Halligan was truck foreman for Northwestern. Because the water truck operator had failed to show up for work, Halligan started driving the water truck. At the time of the accident he was driving with a load of water which was being sprinkled on the road. He was proceeding eastward on the side of the road to his left.

According to Darling's version of the accident, both vehicles were on the north side of the road; there was some wind or a breeze from the north which caused dust from the water truck to be carried over the south portion of the road; empty gravel trucks were using the south portion of the road, which would be the right side of the road for those vehicles.

At first Darling did not do anything about the vehicles approaching each other, until he realized he was getting in a hole. Then he pulled over to his left to see if he could see around the water truck. The dust was so bad, he testified, that he could not see beyond the water truck. He then moved back to his right, to within about four feet of the north shoulder of the road where the impact took place. In the meantime, Darling claims he had slowed his tractor trailer unit from 30 or 35 miles per hour to approximately 20 miles per hour.

Darling was rendered unconscious in the accident and suffered severe bodily injuries. The owner of the gravel truck testified that after the accident he measured some 60 feet of skid marks behind his gravel carrying unit. He measured 10 to 12 feet of skid marks behind the water truck.

According to Halligan's version of the accident, he was traveling on the north or his left side of the road; when he first observed the oncoming dump truck he did nothing about getting to the other side of the road because he believed he had the right of way; he kept going at his previous speed of about 30 miles per hour until the vehicles were approximately 1,000 feet apart; at that point it looked as if the gravel truck was not going to move over so Halligan turned toward his right; it was just as Darling turned to his left;

then Halligan turned back to his left and that was just as Darling turned back to his right. The result was the collision on the north side of the road, which was on Halligan's left and Darling's right.

Asked whether he ever applied his brakes, Halligan answered "I don't know." Asked whether he attempted to come to a complete stop prior to the impact, Halligan answered "not that I recall." The investigating patrolman testified he did not observe skid marks behind the water truck. As we mentioned previously, the plaintiff testified he measured 10 or 12 feet of such marks.

## The Right of Way

Section 31–99, W.S.1957, C.1967, provides a vehicle shall be driven upon the right half of the roadway. There are certain exceptions but none of the exceptions are applicable to the circumstances of this case. It is of interest to notice that the legislature made an exception when the right half of a roadway is closed to traffic while under construction or repairs. It did not, however, see fit to make an exception for construction equipment on the left half of a roadway, when none of the roadway is closed to traffic on account of construction or repairs.

Of equal importance in our decision is § 31–100, W.S.1957, C.1967. It provides drivers of vehicles proceeding in opposite directions shall pass each other to the right.

██ Unless and until Halligan shows that some different rule of the road applied in this case to give him right of way over Darling, his violation of §§ 31–99 and 31–100 must be considered sufficient to hold him negligent as a matter of law and at least partly to blame for the accident in which plaintiff's equipment was damaged. We look then at the reasons defendant advances for believing he had a right of way over Darling.

When asked on the witness stand why he thought he had the right of way, Halligan testified:

"Well, it was, I suppose, the gentleman's agreement you might say. It had been noted at several safety meetings. I suppose that's why."

Regarding the safety meetings referred to, Halligan testified he would hold such meetings for the drivers at least once a week. At such meetings unsafe acts and abnormal driving procedures were discussed —general safety factors. Asked if it was through these meetings that he felt he had the right of way, Halligan replied it was through this that he considered the water trucks part of the compaction or part of the finishing phase of the construction. He added, "and this finishing group of machinery, you normally try to yield the right of way in order to keep your production high."

The trouble with this testimony is the fact that it is very clear from the record that gravel was being laid down at a considerable distance to the west from the scene of the accident. There was no compaction or finishing operation at all in the area where the accident took place.

Moreover, Darling, who had worked on this project for two weeks, testified he had never been informed of such a safety meeting as Halligan testified to; that he never attended one; and that he was never informed or instructed that water trucks were to have a right of way. His testimony was not disputed and there was no evidence to show that Darling had been instructed about certain vehicles having a right of way.

The most telling thing about Halligan's testimony regarding his assumed right of way seems to lie in the fact that he said it had been brought to the attention of the drivers that water trucks may be on any part of the road, either for dust control or for compaction with the finishing equipment. He then stated:

"All of the trucks were to yield the right of way, not only to the water truck, but also to the loaded gravel trucks."

The defendant explained that empty trucks were to yield to full trucks, but no effort was made to establish which ve-

hicles yielded as between water trucks and loaded gravel trucks. Of course, Darling was driving a loaded gravel truck. If the purpose was, as Halligan claimed, to keep production high, it would seem loaded gravel trucks would be as important as water trucks. At least the evidence fails to show otherwise. As to how one vehicle should yield to another, Halligan testified there were no specific instructions.

We fail to find in the evidence any substantial evidence of a "gentleman's agreement," or any other established rule of the road which would supersede legislative declarations to the effect that drivers are to drive on the right half of the roadway and pass to the right when vehicles meet. In other words, we hold defendant has failed to meet the burden imposed upon him of proving that in this instance a rule of the road existed which gave him a right of way over Darling.

Former decisions of this court are in harmony with the conclusion we have reached. For example, it was pointed out in Johnston v. Wortham Machinery Co., 60 Wyo. 301, 151 P.2d 89, 93, that construction work on a highway does not nullify or render inoperative the rules of the road. In Brown v. Wyoming Butane Gas Co., 66 Wyo. 67, 205 P.2d 116, 122, it was said a custom which conflicts with a statutory provision will not be enforced; and where there is such conflict, the statute must control.

Also, in Hilferty v. Mickels, 171 Neb. 246, 106 N.W.2d 40, 48, it was said the observance of a practice or custom which is contrary to a statute upon the subject does not prevent a motorist from being guilty of a violation of the statute. The motorist who violated the statute was held guilty of negligence as a matter of law. 106 N.W.2d 50.

### Regardless of Right of Way

Section 31-130, W.S.1957, C.1967, provides in every event speed shall be so controlled as may be necessary to avoid colliding with any vehicle on the highway and in compliance with the duty of all persons to use due care. In McVicker v. Kuronen, 71 Wyo. 222, 256 P.2d 111, 116, this court said, though one is given the right of way, it remains his duty to exercise reasonable care to avoid collisions with other vehicles.

Here, both drivers were under a duty to exercise due care in avoiding a collision. We think the defendant, being on the wrong side of the road, even if he thought he had the right of way, should have so driven that he could stop or give way to traffic in its proper lane of travel. See O'Mally v. Eagan, 43 Wyo. 233, 2 P.2d 1063, 1068.

The evidence failed to show that Halligan applied his brakes or tried to stop until the collision was unavoidable. Instead, he continued to speculate at what Darling was going to do. Without pretending to pass on the question of Darling's negligence or misjudgment, we simply say if he was negligent by continuing forward when he did not know what the other driver was going to do, then Halligan was equally negligent for doing the same thing.

Until the defendant was in trouble at approximately 1,000 feet from the other vehicle, he continued forward without attempting to turn out, reduce his speed or stop. Even then, as we have indicated, he was not able to say whether he applied his brakes and he did not recall that he had tried to stop. To show that he was in trouble and still did not know what to expect of the other driver before he acted to avoid a collision, we quote the following from his testimony:

"Q. You kept going; is that correct, on the north side of the road? A. Yes, sir.

"Q. At the same speed? A. Yes, sir.

"Q. And did you ever turn to the left or right? A. Yes, sir, I did.

"Q. When, how far away? A. About a thousand feet before I—before the impact site.

"Q. Why did you turn back to the right at that time? A. Well, it looked to me like he wasn't going to move over.

"Q. Could you tell for sure? A. He was coming at a pretty good rate of speed and I couldn't tell for positive, no.

"Q. You couldn't tell what he was going to do at that time? A. It was getting close enough to where I thought one of us had better be moving."

Some of the plaintiff's damages were stipulated to. Evidence was offered as to other damages which are claimed. Further proceedings are necessary for a determination of all damages alleged and proved by plaintiff. The case must be remanded for this purpose.

Reversed and remanded with instructions to make a determination of damages and to enter judgment for the plaintiff.