STANLEY E. KRUL, JR., APPELLANT AND CROSS-APPELLEE, V. TODD
E. HARLESS AND STERKEL FARMS, INC., APPELLEES AND
CROSS-APPELLANTS.

383 N.W.2d 744

Filed March 28, 1986.   No. 84-845.

Michael J. Javoronok of Holtorf, Kovarik, Nuttleman,
Ellison, Mathis & Javoronok, P.C., for appellant.

Robert P. Chaloupka of Van Steenberg, Brower, Chaloupka,
Mullin & Holyoke, for appellees.

KRIVOSHA, C.J., CAPORALE, and SHANAHAN, JJ., and
GARDEN, D.J., and COLWELL, D.J., Retired.

SHANAHAN, J.
The district court for Morrill County sustained
cross-motions for summary judgment and dismissed the
petition of Stanley E. Krul, Jr., for damages (bodily injury and
property) and the counterclaim of Sterkel Farms, Inc., for
property damage, arising from an automobile-truck accident.
The accident occurred shortly before 10 a.m. on January 8,

1983, near an intersection of a private driveway and an east-west gravel road in Morrill County. Weather was not a factor in the accident.

Krul, alone and driving his Ford Pinto, was northbound on a private driveway from his neighbor's farm residence. The driveway intersected with a gravel county road running east and west for which the speed limit was 50 m.p.h. An east-west shelterbelt of fir trees was located south of the county road and east of the private driveway. As the road ran eastward, a grade developed to a crest of a hill at some distance from the driveway. The record does not disclose the degree of the grade or the distance from the driveway to the crest of the hill.

According to his deposition testimony, Krul was operating his car at approximately 25 m.p.h. down the driveway, as he approached the road. The shelterbelt obstructed Krul's vision to the east as he approached the road-driveway intersection, preventing Krul from seeing traffic westbound and approaching from the east on the road. Without stopping his car before entering the road, Krul completed his turn to the right and drove east on the road at a speed less than 10 m.p.h. for 70 feet, when he first saw the westbound truck approaching "on my side of the road." On seeing the oncoming truck Krul "tried to go for the ditch" at the south side of the road. At impact with Krul's car the truck was south of the road's "imaginary centerline."

There is no question that Harless was employed by Sterkel Farms at the time of the accident and was acting within the scope of such employment. Sterkel Farms' tractor was pulling an empty trailer used to transport cattle. Harless, by deposition, testified that he was alone and operating Sterkel Farms' truck tractor and semitrailer westbound, approaching the crest of the hill east of the road-driveway intersection. As it approached the crest of the hill, Sterkel Farms' truck was traveling "43 to 45 miles an hour," and "maybe a couple mile an hour over that" when the truck started down the hill. Harless acknowledged making the statement, "Well, I was going — I was in eleventh gear, which is anywhere from 45 to 53 miles per hour," and was aware of road conditions, sandy shoulders at roadside, the shelterbelt, and, generally, the vicinity of the

accident site. Harless explained one problem in driving a semi on a sandy road, such as the road where the accident happened, namely, "If you get too far over, [too close to] the edge of the road, it will suck you off the road and stuff like that." Although he testified he did not know the width of the road at the accident scene, Harless also acknowledged in his deposition that he made a statement in which he estimated the road to be, probably, 15 or 16 feet wide. On account of the sandy condition at its edges, according to Harless, the road was a dangerous surface for a semi. Harless testified he did not know the distance from the crest of the hill to the road's intersection with the private driveway. According to Harless' testimony, Krul's car had entered the road without stopping and never completed the right turn onto the road. As soon as he saw Krul, Harless "stepped on the brakes," but "the sand sucked me a little bit" to the left (south). Harless did not know the distance which his rig skidded before impact at a point "less than 50 feet" from the intersection. Harless also did not know whether the semi was north or south of the road's centerline at impact with the Krul car, but, at impact, Krul was "in his [Krul's] lane."

The sheriff of Morrill County responded to a call concerning the accident. The sheriff was Roger D. Sterkel, younger brother of Robert D. Sterkel, owner of Sterkel Farms. Sheriff Sterkel testified that, on arrival at the accident scene, he made measurements. The width of the road was 19 feet and "probably measured 23, 24 feet from sloping shoulder to sloping shoulder." The sheriff identified one set of tire tracks as belonging to the semi and another set as belonging to Krul's Pinto. As testified by the sheriff: "Well, I measured from the vehicle tracks from one side to the edge of the road, what I assumed to be about the edge, and that was about 7 feet, and the other side was about 12." Regarding the measurement of 7 feet, the sheriff explained: "That was measuring from the left track of the semi to the sloping shoulder of the south side of the road." In further explanation, referring to the measurement of 12 feet, Sheriff Sterkel testified: "That was the right track from the semi to the north side of the road, to the right side of the road to the sloping shoulder."

Although he acknowledged lack of experience, courses, or

training as an accident investigator in determining a point of impact, Sheriff Sterkel located the point of impact "[b]ecause that's where the vehicle, the car tracks, met right with the semi tracks and that's where the glass and the first debris started." The sheriff made no measurement to determine the distance between what he believed to be the point of impact and the road's intersection with the private driveway. Sterkel Farms' rig was 8 feet wide, "the trailer and everything." Skid marks east of the "point of impact" measured 120 feet. The rear skid mark from the semi, according to the sheriff, was "a couple of feet, I'd say about four feet at the most," south of the road's centerline. During redirect examination by Sterkel Farms' counsel in reference to measurements at the scene, the following transpired:

Q.   So everything we're talking about here would just be a guess really, wouldn't it?

A.   The measurements from the —

Q.   Except for the measurements of 7 and 12 feet.

A.   Right. Everything else would be —

Q.   — would be a guess, wouldn't it?

A.   Right.

Sterkel recalled the distance from the road to the shelterbelt—15 or 16 feet—although he never made any measurement, but, rather, "I just sort of stepped it off."

Photographs taken at the accident scene depicted Krul's Pinto damaged on its left side. The car's right front headlight was undamaged, and there was no visible damage to the right side of the car. Major damage to the Krul car was concentrated in the area of the left front headlight, which was demolished, and in the area of the bumper and front tire on the left side. The left front fender was torn from the car's body. Damage extended toward the rear of the vehicle, culminating in a large gash at the rear part of the door on the driver's side. Debris attributable to the Krul car, apparently the remainder of the left front fender, was depicted at the south edge of the road, either east of the sheriff-established point of impact or directly south of such point. The only damage to the Sterkel Farms' rig was located on the left dual tires of the tractor and was evidenced by fresh scuffs on those tires, as well as fresh dents in the tire rims

for the tractor's duals. Depicted were the tire marks from the semi and the usable road surface which, according to the sheriff, consisted of 10 feet north of the truck's tracks.

When he arrived at the scene and as a part of his investigation, Sheriff Sterkel questioned Krul and Harless. Krul appeared to be in shock, but, answering the sheriff's questions, Krul stated: "I didn't stop. I turned right out there. I didn't see the semi in time to avoid the collision." According to Sterkel, Krul "said it was his fault." Harless told the sheriff that

> [Harless] felt like he was at fault because he came over the hill and he was in the middle of the road, and he didn't see the car until it was too late. And when he did see the car, he applied his brakes and he tried to move over out of the way, but he was too late.

In response to a question, "Did [Harless] say anything about speed?" the sheriff responded, "He talked like he was running about 50 with his semi."

In his petition Krul alleged that Harless, operating Sterkel Farms' semi, failed to keep a proper lookout, to reasonably control the semi, and to drive on the right half of the road. Krul also alleged Harless drove at a rate exceeding the speed limit. Harless and Sterkel Farms answered, denied any negligence, and alleged that the proximate cause of the accident was Krul's negligence in operating his car, namely, lack of lookout, no reasonable control, failure to stay on the right half of the road, and failure to yield the right-of-way to the semi driven by Harless. Assumption of the risk on the part of Krul was also alleged.

On cross-motions for summary judgment, the district court granted both motions, finding there was no genuine issue as to any material fact and that

> [e]ach driver was guilty of contributory negligence sufficient to bar recovery as a matter of law. Harless was operating his vehicle over the center line of the road and at a speed which could have been excessive under the circumstances. Krul entered the county road from a private lane without stopping and looking. If he had looked, there would not have been a collision.

Krul and Sterkel Farms appeal dismissal of their respective

actions.

A motion for summary judgment is properly granted only where no genuine issue of fact exists concerning any material fact, the ultimate inferences to be drawn from the facts are clear, and the moving party is entitled to judgment as a matter of law. Neb. Rev. Stat. § 25-1332 (Reissue 1979); *Stromsburg Bank v. Nuttelman*, 218 Neb. 687, 358 N.W.2d 746 (1984). In considering a motion for summary judgment, a court must view the evidence most favorably to the party against whom the motion is directed, granting that party the benefit of all favorable inferences which may reasonably be drawn from the evidence. See *Gall v. Great Western Sugar Co.*, 219 Neb. 354, 363 N.W.2d 373 (1985). Although the primary purpose of a summary judgment is to pierce allegations made in pleadings and show conclusively that the controlling facts are other than as pled, see *Witherspoon v. Sides Constr. Co.*, 219 Neb. 117, 362 N.W.2d 35 (1985), summary judgment is an extreme remedy and should be awarded only when an issue is clear beyond all doubt. See *Scheideler v. Elias*, 209 Neb. 601, 309 N.W.2d 67 (1981).

Some Nebraska statutes applicable in the present case include:

> In all actions brought to recover damages for injuries to a person or to his property caused by the negligence or act or omission giving rise to strict liability in tort of another, the fact that the plaintiff may have been guilty of contributory negligence shall not bar a recovery when the contributory negligence of the plaintiff was slight and the negligence or act or omission giving rise to strict liability in tort of the defendant was gross in comparison, but the contributory negligence of the plaintiff shall be considered by the jury in the mitigation of damages in proportion to the amount of contributory negligence attributable to the plaintiff; and all questions of negligence or act or omission giving rise to strict liability in tort and contributory negligence shall be for the jury.

Neb. Rev. Stat. § 25-1151 (Reissue 1979).

> The driver of a vehicle emerging from an alley, driveway, private road, or building shall stop such vehicle

immediately before driving onto a sidewalk or onto the sidewalk area extending across such alley, driveway, road, or building entrance, and shall yield the right-of-way to any pedestrian approaching on any sidewalk extending across such alley, driveway, road, or building entrance. Before entering the highway, he shall yield the right-of-way to all vehicles approaching on such highway.

Neb. Rev. Stat. § 39-638 (Reissue 1984).

Upon all roadways of sufficient width a vehicle shall be driven upon the right half of the roadway [subject to exceptions not applicable in the present case].

Neb. Rev. Stat. § 39-620(1) (Reissue 1984).

Passing vehicles proceeding in opposite directions shall keep to the right side of the roadway, passing left to left, and upon roadways having width for not more than one lane of traffic in each direction, each driver shall give to the other, as nearly as possible, at least one half of the main-traveled portion of the roadway.

Neb. Rev. Stat. § 39-621 (Reissue 1984).

"Generally, one is contributorily negligent if (1) he breaches the duty imposed upon him by the law to protect himself from injury; (2) his actions concur and cooperate with actionable negligence of the defendant; and (3) his actions contribute to the injuries as a proximate cause." *Steinauer v. Sarpy County*, 217 Neb. 830, 836, 353 N.W.2d 715, 721 (1984).

We reviewed a factual situation strikingly similar, even virtually identical, to the facts of the present case when we decided *Hilferty v. Mickels*, 171 Neb. 246, 106 N.W.2d 40 (1960). In *Hilferty*, Hilferty was driving his car west on a private driveway intersecting a two-lane gravel county road with a width of 18 feet. A wooded shelterbelt extended northward approximately 300 feet along the east side of the road. An icy condition existed on the road parallel with the shelterbelt which obstructed a road traveler's vision of the private driveway. Mickels was traveling south at a speed between 48 and 49 m.p.h., was driving in the center of the road, and was, therefore, encroaching on the road's east, or northbound, lane of traffic. Hilferty, seeing the southbound Mickels several hundred feet north of the driveway-road

intersection, did not stop at the intersection but at a speed of 10 m.p.h. drove his car onto the road. Hilferty's car had not completed its right turn when it collided with the Mickels vehicle. In reaching its decision the district court relied on Neb. Rev. Stat. § 39-752 (Reissue 1952)—the statutory predecessor of the current § 39-638 (Reissue 1984)—namely: "The driver of a vehicle entering a public highway from a private road or drive shall yield the right of way to all vehicles approaching on such public highway." The district court found that the cause of the collision was Hilferty's failure to yield the right-of-way to Mickels, dismissed Hilferty's petition due to the plaintiff's contributory negligence as a matter of law, and awarded judgment for the full amount of Mickels' counterclaim.

In reversing the district court's judgment that Hilferty was guilty of contributory negligence as a matter of law, barring recovery, and in setting aside the counterclaim judgment in favor of Mickels, whom this court determined to be guilty of negligence as a matter of law and not entitled to any recovery, this court in *Hilferty v. Mickels, supra,* stated at 260, 106 N.W.2d at 49: "It is not every traveler upon a public highway, then, who is entitled to the right-of-way over one entering from a private lane or drive . . . ," and then expressed the following at 262, 106 N.W.2d at 50:

> "The 'right of way' does not include a right to encroach upon that half of the highway upon which cars coming from the opposite direction are entitled to travel. * * * Moreover, 'before the driver of any vehicle is entitled to the right of way such driver himself must be operating his vehicle within the law and not in violation thereof.' . . ."

Citing and quoting from *Carley v. Zeigler,* 156 Cal. App. 2d 643, 320 P.2d 165 (1958). In *Hilferty* we also stated at 262, 106 N.W.2d at 50:

> The statute concerning right-of-way of a vehicle traveling upon a public highway over a vehicle entering it from a private [road] quoted above does not mean that any vehicle traveling on any part of the highway in any manner, however negligently approaching the private [road], has the right-of-way in the entire highway. . . . The right-of-way which the statute makes available does not

include a right to encroach on the half or part of a highway on which traffic coming from the opposite direction is entitled to travel. A provision of law granting a right-of-way to a user of a highway is generally not absolute but relative and subject to the qualification that the person entitled to claim the right will exercise it with proper regard for the safety of himself and others.

This court has consistently adhered to the rule that the failure to see an approaching vehicle is negligence as a matter of law where such vehicle is indisputably located in a "favored position." See, *Lane v. State Farm Mut. Automobile Ins. Co.*, 209 Neb. 396, 308 N.W.2d 503 (1981); *Treffer v. Seevers,* 195 Neb. 114, 237 N.W.2d 114 (1975). A vehicle is located in a " 'favored position' " when it is " 'within that radius which denotes the limit of danger,' " *Hermansen v. Anderson Equipment Co.*, 174 Neb. 325, 330, 117 N.W.2d 791, 794 (1962), a definition which focuses upon the vehicle's geographical proximity to the collision point and the vehicle's favored status under the applicable rules of the road. See, *Eden v. Spaulding*, 218 Neb. 799, 359 N.W.2d 758 (1984) (whether vehicle was indisputably in a favored position turned upon whether the vehicle's driver had executed a left turn prior to a traffic signal's turning red); *Bonnes v. Olson*, 197 Neb. 309, 248 N.W.2d 756 (1976) (concept of favored position viewed in terms of whether a vehicle, within the limit of danger, was favored under rules of the road); *Maska v. Stoll*, 163 Neb. 857, 81 N.W.2d 571 (1957) (favored position defined in terms of whether a vehicle is "within that range which denotes limit of danger" and favored "under rules of the road").

Statutory characterization of a "right-of-way" is found in Neb. Rev. Stat. § 39-602(81) (Reissue 1984): "Right-of-way shall mean the right of one vehicle or pedestrian to proceed in a lawful manner in preference to another vehicle or pedestrian approaching under such circumstances of direction, speed, and proximity as to give rise to danger of collision unless one grants precedence to the other." Generally, an unexcused vehicular encroachment on another's lane of traffic, such as driving to the left of the midline of a roadway contrary to §§ 39-620 and 39-621, prevents acquisition of a right-of-way and precludes the

unlawful encroachment from becoming a favored position in movement of traffic. Accordingly, a motorist colliding with an unlawfully encroaching vehicle is not, as a matter of law, guilty of contributory negligence more than slight by failing to see and avoid such approaching, encroaching vehicle.

We are aware that this court has adopted a general rule that a motorist's failure to look, when looking would have been effective in avoiding a collision, is negligence as a matter of law. See *Circo v. Transit Auth. of City of Omaha*, 217 Neb. 497, 348 N.W.2d 908 (1984). Application of the foregoing general rule is limited to situations where another vehicle is indisputably located in a favored position, see *Nichols v. McArdle*, 170 Neb. 382, 102 N.W.2d 848 (1960), or a driver charged with negligence as a matter of law has executed a dangerous driving maneuver which, in part, led to a collision. See, *Circo v. Transit Auth. of City of Omaha, supra* (plaintiff, in executing a left turn, moved "beyond what would be the normal lane of traffic for such a left turn"); *Zeiger v. Farmers Co-op Assn.*, 212 Neb. 933, 327 N.W.2d 43 (1982) (plaintiff executed a left turn across a public highway between intersections). Absent such factual variances, the controlling principle remains that although a "driver of a motor vehicle has the duty to keep a proper lookout and watch where he is driving even though he is . . . driving on the side of the highway where he has a lawful right to be," *Murray v. Pearson Appliance Store*, 155 Neb. 860, 867, 54 N.W.2d 250, 255 (1952), where such driver "fails to see a car not shown to be in a favored position, the presumption is that [the other driver] will respect his right-of-way and the question of [the lawful driver's] contributory negligence in proceeding . . . is a jury question." *Maska v. Stoll, supra* at 865, 81 N.W.2d at 576.

Under the record presented in this case, there are genuine issues of material fact and variable inferences which may reasonably be drawn from facts yet to be determined regarding Krul's claim. Although he did not stop at the road-private driveway intersection, under the circumstances in the present case Krul was not required by § 39-638 to stop before entering the county road. Krul testified he had completed his turn and traveled 70 feet east in the south, or eastbound, lane of traffic on the county road, all without having seen Sterkel Farms'

truck approaching from the east. Whatever the sheriff's testimony lacks in providing results of accurate measurements at the scene, the sheriff's testimony concerning the tire marks from the semi establishes that the truck was encroaching on the eastbound lane of traffic for some distance immediately before impact. There is no excuse established justifying the semi's encroachment on Krul's lane of traffic. Harless admitted that, when the semi collided with the Pinto, Krul was in the eastbound lane. Clearly, Sterkel Farms' semi acquired no right-of-way or favored position in reference to the Krul car. If Krul had proceeded east in his lane of traffic as he testified, and had the semi been driven in its westbound lane of traffic available for passage, would the accident have occurred? Cf. *Hilferty v. Mickels*, 171 Neb. 246, 106 N.W.2d 40 (1960). Given the impact at some distance east of the private driveway and Krul's right-of-way to be accorded in the south, or eastbound, lane of traffic, could not Krul presume that any westbound motorist, not in a favored position, would respect Krul's right-of-way? See *Maska v. Stoll*, 163 Neb. 857, 81 N.W.2d 571 (1957). As far as the arboreous shelterbelt is concerned and its obstruction to a view of the county road, were the trees actually a factor in the accident? Was Krul's lack of observing Sterkel Farms' rig negligence under the circumstances? If the rate of speed for Krul's car is accepted, and there is nothing in the record negating such speed, Krul was driving east at 10 m.p.h., or moving at a rate of 14.66 feet per second. Krul's traveling 70 feet on the road required 4.77 seconds. On the other hand, Sterkel Farms' semi, traveling at 50 m.p.h., was moving at a rate of 73.33 feet per second and would travel 350 feet in the time Krul's car traveled 70 feet. Was the truck visible on the road before or when Krul entered the road from the private driveway? Or was the truck out of view somewhere beyond the crest of the hill, an undisclosed distance to the east? Under present principles, if Krul is contributorily negligent, the effect of such contributory negligence may yet be a question to be resolved under Nebraska's comparative negligence statute. See, § 25-1151; *Hilferty v. Mickels, supra*; *Maska v. Stoll, supra*. Resolution of such questions on the basis of the record before us would be speculation and much like many of the

investigating officer's measurements, a "guess." With questions of facts existing in this case, the district court's judgment in sustaining the motion for summary judgment against Krul is incorrect and is reversed.

Regarding operation of Sterkel Farms' semi, we believe the district court correctly concluded that there was contributory negligence as a matter of law sufficient to bar recovery by Sterkel Farms. Section 39-620(1) required Harless to operate the semi on the right half of the road. The evidence conclusively establishes that Harless was driving the westbound semi in the eastbound, or south, lane of traffic, in violation of the rules of the road. Harless was aware of road conditions but was unable to return the semi to its proper lane of traffic. See §§ 39-620 and 39-621. Such operation was a proximate cause of the accident and sufficient contributory negligence as a matter of law to bar recovery. See *Hilferty v. Mickels, supra. Hilferty* presents a cow case for Sterkel Farms' cattle truck. The district court's judgment sustaining Krul's motion for summary judgment against Harless and Sterkel Farms is correct and is affirmed.

This matter is remanded to the district court for further proceedings on Krul's petition.

AFFIRMED IN PART, AND IN PART REVERSED AND
REMANDED FOR FURTHER PROCEEDINGS.